[Cite as *Vontz v. Miller*, 2016-Ohio-8477.]

# IN THE COURT OF APPEALS
# FIRST APPELLATE DISTRICT OF OHIO
# HAMILTON COUNTY, OHIO

| | | |
|---|---|---|
| ALBERT W. VONTZ III, | : | APPEAL NO. C-150693 |
| | | TRIAL NO. A-1407093 |
| Plaintiff-Appellee, | : | |
| | | |
| vs. | : | *O P I N I O N.* |
| | | |
| VAIL K. MILLER, SR., | : | |
| | | |
| CAROL V. MILLER, | : | |
| | | |
| VAIL K. MILLER, JR., | : | |
| | | |
| BROOKE MILLER HICE, ESQ., | : | |
| | | |
| and | : | |
| | | |
| MICHAEL W. MILLER, | : | |
| | | |
| Defendants-Appellants, | : | |
| | | |
| and | : | |
| | | |
| DAYTON HEIDELBERG DISTRIBUTING CO., | : | |
| | | |
| Nominal Defendant. | : | |

Civil Appeal From: Hamilton County Court of Common Pleas

Judgment Appealed From Is: Affirmed in Part, Reversed in Part, and Cause Remanded

Date of Judgment Entry on Appeal: December 30, 2016

*Keating, Muething & Klekamp PLL, James E. Burke, Bryce J. Yoder,* and *Meaghan K. FitzGerald,* for Plaintiff-Appellee,

*Vorys, Sater, Seymour and Pease LLP, Daniel J. Buckley, J.B. Lind,* and *Elizabeth E.W. Weinewuth*, for Defendant-Appellant Carol V. Miller,

*Coolidge Wall Co., LPA, Terence L. Fague,* and *Jennifer R. Roberts,* for Defendants-Appellants Vail K. Miller, Sr., Carol V. Miller, Vail K. Miller, Jr., and Michael W. Miller, in their capacities as directors and officers of Dayton Heidelberg Distributing Co.,

*Katz Teller Brant & Hild, Robert A. Pitcairn, Jr.,* and *Peter J. O'Shea*, for Defendant-Appellant Brooke Miller Hice.

**CUNNINGHAM, Presiding Judge.**

{¶1}   This appeal is taken from the order of the Hamilton County Court of Common Pleas awarding injunctive relief to plaintiff-appellee Albert W. Vontz III in an action involving a dispute among the shareholders of nominal defendant Dayton Heidelberg Distributing Co., an Ohio family-owned-and-operated close corporation ("Heidelberg"), Heidelberg's six-member board of directors, and its officers.

{¶2}   Vontz is the owner of 50 percent of the voting shares of Heidelberg, and its president and co-chairman of its board.  He alleged, among other things, that his sister, defendant-appellant Carol V. Miller ("Miller"), the owner of the other 50 percent of the voting shares and also a board member, along with the other four defendants-appellants, all members of Miller's family, officers of the corporation, and board members under her control (with Miller, "the Miller family"), had purposely disenfranchised him to maintain their control of the corporation.

{¶3}   Vontz requested equitable relief in the form of an injunction to allow him to exercise his voting rights and to redress what he alleged was a breach of fiduciary duties, a breach of contract, and a violation of corporate requirements by the Miller family.  His request was granted as part of the injunctive relief afforded by the trial court after a trial of the matter.  Of relevance to this appeal, the court ordered that (1) the board, with court monitoring, schedule the annual shareholder meeting for the election of directors that the Miller family board members had refused to schedule, (2) both Miller and Vontz attend the meeting, (3) Vontz be afforded "equal representation" on the board, with "[t]he parties to work out the current Board members to be displaced," (4) Miller's daughter, as general counsel for Heidelberg, "treat" Vontz and Miller "equally," and (5) the parties "pay their

respective attorneys' fees." The appellants challenge the trial court's judgment on various grounds in multiple assignments of error.

{¶4} We hold that the record amply supports the trial court's conclusion that Miller had caused irreparable harm to Vontz by suppressing his voting rights, and that injunctive relief was warranted to prevent further oppression. But we sustain in part several assignments of errors and order that the trial court on remand modify the language of the injunction.

{¶5} Specifically, we order the trial court to (1) strike the language of the injunctive order requiring the board to schedule a shareholder meeting, (2) strike the language requiring Miller to attend the shareholder meeting, (3) modify the order to add that when a meeting for the election of directors is called—either by the board or by Vontz—the shareholders attending the meeting, in person or by proxy, and entitled to vote in an election of directors shall constitute a quorum for the purpose of electing directors, (4) to strike the language providing that Vontz "shall be allowed to have equal representation on the Board," directing "the parties to work out the current Board members to be replaced," and directing general counsel "to treat both shareholders equally." Our reasoning for these modifications, along with our treatment of the remainder of the trial court's order, is provided below.

## I. Background Facts and Procedure

{¶6} In addition to Miller, the appellants here include the following: (1) Miller's husband, Vail K. Miller, Sr., ("Senior") who serves as Heidelberg's co-chairman of the board and its secretary; (2) Vail K. Miller, Jr., ("Junior") son of Miller and Senior, who serves as the chief executive officer of Heidelberg's Dayton operation, and who claims to be, over Vontz's objection, Heidelberg's chief executive officer; (3) Brooke M. Hice ("Hice"), daughter of Miller and Senior, who serves as the

4

executive vice president and general counsel of Heidelberg; and (4) Michael W. Miller ("Michael Miller"), son of Miller and Senior, who serves as vice president of sales and marketing of Heidelberg.

{¶7}   Heidelberg is an Ohio for-profit S-corporation, with a very large beer, wine, and spirits distribution business. The company was founded in 1938 by the grandfather of Vontz and Miller. Their father later took over the company and became its sole shareholder. He transferred some shares to his two children during his lifetime, and after he died in 2002, Vontz and Miller inherited the remainder of his shares, leaving them each with 50 percent of the voting shares of the company. As the trial court found, the record does not show that their father had intended other than an equitable division of the company with the two siblings working together.

{¶8}   To ensure an equitable division, Vontz and Miller in 2009 entered into a shareholders' agreement providing that "[i]t is the intent of the parties that the 50%/50% division of Share ownership shall be preserved at all times as between the Miller Family and the Vontz Family." The agreement also preserves the cumulative voting rights of the shareholders.

{¶9}   During the almost 50 years that Vontz and Miller's father controlled Heidelberg, the company operated informally. Director seats were "ceremonial" positions, awarded by Vontz and Miller's father. Junior and Hice were appointed to the board when they were only 18 years old. Vontz's only child was never named to the board, but he was only 12 years old at the time of his grandfather's death.

{¶10} Over the ten years preceding the filing of this action, the corporation had not held an annual shareholder meeting. The last informal election of board members that reflected the consensus of the voting shareholders and that was signed

5

by Vontz as president occurred in 2007. That board was comprised of seven directors and included the mother of Vontz and Miller. After their mother died, that seat remained vacant, but Vontz, Miller, Senior, Junior, Hice, and Michael Miller remained on the board.

{¶11} The governance of the company was marked by consensus for many years, but began to change in 2010 after Vontz, who had loaned $17 million to the company, became concerned about the lack of proper corporate governance, the increased debt level of the company, and the Miller family's use of corporate assets and positions. As a result of these concerns, in 2011, Vontz began to informally suggest to the other board members that Ohio's general corporation law and the Heidelberg Code of Regulations mandated annual shareholder meetings for the election of directors as a matter of law.

{¶12} R.C. 1701.39 provides, in relevant part as follows:

> An annual meeting of shareholders for the election of directors * * * **shall be held** on a date designated by, or in the manner provided for, in the articles or in the regulations. In the absence of such designation, the annual meeting shall be held on the first Monday of the fourth month following the close of each fiscal year of the corporation. When the annual meeting is not held or directors are not elected thereat, they may be elected at a special meeting called for that purpose.

(Emphasis added.)

{¶13} With respect to the annual shareholder meeting, the regulations provided that "[t]he annual meeting of shareholders for the election of Directors * * *

6

**shall be held** on such date as the Board of Directors may establish from time to time." (Emphasis added.) The regulations allowed for special shareholder meetings as called for by the chairman or president. And the regulations further provided that "[a]ny action required by the Ohio Revised Code to be taken at a meeting of the shareholders * * * may be taken without a meeting if a consent in writing, setting forth the action so taken, shall be signed by all of the shareholders entitled to vote at a meeting for such a purpose and filed with the Secretary of the Corporation." Finally, the regulations provided that the directors elected at the annual meeting would hold office for a one-year term or "until * * * his [or her] successor is elected and qualified."

{¶14} In 2013, Vontz sent a proposal to the other board members requesting that the board adhere to proper corporate governance and schedule annual shareholder meetings to elect new directors, three of whom he would be able to elect in accordance with his voting rights as a 50 percent voting shareholder. The seventh director seat would be deemed nonvoting and filled by the company's chief financial officer.

{¶15} While Miller by letter indicated that in theory she was open to observing more of the corporate formalities, she rejected Vontz's proposal with respect to the board, noting that the company was very successful and that "if it is not broke, don't fix it." None of the other directors acted on Vontz's suggestion. Hice, general counsel for the corporation, told Vontz at that time that she disagreed with his contention concerning the need for an annual shareholder meeting for the election of directors. But she acknowledged at trial that the relevant statutory and corporate provisions "unambiguously" required an annual shareholder meeting.

{¶16} After Vontz's unsuccessful attempts to have the board schedule an annual shareholder meeting, he informed the other board members that as co-chairman of the board he would notice a special shareholder meeting for the election of new directors. About this time, the relationship between Vontz and the Miller family had become so contentious that both sides submitted proposals for a separation and/or buy-out. However, the Miller family threatened to terminate all preliminary negotiations if Vontz followed through with noticing a special shareholder meeting for the election of directors. On December 5, 2014, after buy-out negotiations fell apart, Vontz filed the action underlying this appeal.

{¶17} After filing his action, Vontz noticed special shareholder meetings for December 17, 2014, January 16, 2015, and July 3, 2015, for the express purpose of electing a new board, and he contemporaneously noticed his desire to vote cumulatively. Despite having received all notices, Miller, after discussing the matter with the other Miller family members, refused to attend. Miller took the position, as did the other parties, that under the company's regulations for the election of new directors, Miller's attendance as the other 50 percent voting shareholder was necessary to establish a quorum, without which no new directors could be elected.[1]

{¶18} Because Miller refused to attend, the quorum requirement in the regulations was not met. Thus, no directors could be elected. The composition of the board carried over, as intended by the Miller family. While Miller refused to attend the special shareholder meetings, the Miller family scheduled and attended a board meeting to approve increased compensation and bonuses to the Miller family officers and associates. The measures were approved over the objection of Vontz,

---

[1] This understanding of the "quorum requirement" was central to the parties' respective arguments during the trial and on appeal.

who complained that he had not been provided the information sufficiently in advance to evaluate the increased compensation.

{¶19} Ultimately, the board did not schedule the annual shareholder meetings as requested by Vontz, and Miller refused to attend the special shareholder meetings noticed by Vontz. As established at trial, the Miller family's intention was to prevent Vontz from exercising his voting rights in order to perpetuate Miller's control of the company and to keep the Miller family in five of the six voting seats on the board. And Miller made clear at trial that she would not attend any shareholder meetings unless ordered by the court.

{¶20} The trial court entered judgment for Vontz and granted injunctive relief. The basis of the trial court's judgment was articulated in a letter opinion that was sent to the parties and journalized. Subsequently, the trial court conditionally stayed the injunctive order pending this appeal.

## II. Analysis

{¶21} Miller, as shareholder, and Hice, as director and general counsel, each filed separate appellate briefs in support of their challenge to the trial court's judgment. Senior, Junior, and Michael Miller, as directors and officers, filed a joint appellate brief, in which Miller, as director, joined.

{¶22} Miller raises three assignments of error that provide in essence that the trial court erred (1) by finding for Vontz on the breach-of-fiduciary-duty and breach-of-contract claims, and by ordering her to attend a shareholder meeting, (2) by ordering the board to be "equalized," and (3) by failing to dismiss Vontz's claim based on the violation of corporate requirements.

{¶23} Hice's seven assignments of error provide in essence that the trial court erred (1) by finding for Vontz on the claim that she had breached her fiduciary

9

duty as director, (2) by finding for Vontz on the claim that she had beached her fiduciary duty as general counsel, (3) by ordering her, as general counsel, to treat both shareholders equally, (4) by ordering, in violation of Civ.R. 65(D)'s specificity requirement, that she treat both shareholders equally and "[t]hat the parties [] work out the current Board members to be displaced," (5) by finding for Vontz on the breach-of-contract claim, (6) by failing to dismiss Vontz's claim based on the violation of corporate requirements, and (7) by ordering the parties to pay their own attorney fees, if by this language the trial court intended to deny her the right to advancement and indemnification from the company.

{¶24}  Miller, Senior, Junior, and Michael Miller as directors and/or officers ("the Miller Directors") raise four assignments of error.  These assignments of error provide in essence that the trial court erred (1) by finding for Vontz on the breach-of-fiduciary-duty claim and by determining that the breach had resulted in irreparable harm, (2) by finding for Vontz on the breach-of-contract claim, (3) by finding for Vontz on the claim based on the violation of corporate requirements, and (4) by ordering the parties to pay their own attorney fees, if by this language the trial court intended to deny them the right to advancement and indemnification from the company.

{¶25}  In sum, all appellants challenge both the trial court's determination that Vontz had established a right to injunctive relief and the terms of the injunctive relief ordered by the court.  A permanent injunction is issued after the movant has demonstrated a right to relief under the applicable substantive law.  *Procter & Gamble Co. v. Stoneham*, 140 Ohio App.3d 260, 267, 747 N.E.2d 268 (1st Dist.2000).  A party seeking an injunction must show both that the injunction is necessary to prevent irreparable harm, and that the party does not have an adequate

10

remedy at law. *Id.* We note also, as the trial court did, that Vontz was required to prove his case by clear and convincing evidence to be entitled to injunctive relief on any of his claims. *Id.* at 267-268.

**{¶26}** We review the trial court's decision to grant or deny an injunction under an abuse-of-discretion standard. *Id.* at 268. But we review de novo issues of law upon which the trial court based its decision, such as the sufficiency of the evidence to support a judgment and the interpretation of contract and statutory provisions. *Ceccarelli v. Levin*, 127 Ohio St.3d 231, 2010-Ohio-5681, 938 N.E.2d 342, ¶ 8; *Lehigh Gas-Ohio, LLC v. Cincy Oil Queen City, LLC*, 1st Dist. Hamilton No. C-130127, 2014-Ohio-2799, ¶ 43. And we review factual determinations under the deferential manifest-weight-of-the-evidence standard. *See Eastley v. Volkman*, 132 Ohio St.3d 328, 2012-Ohio-2179, 972 N.E.2d 517, ¶ 20-21.

**{¶27}** We begin by determining whether the trial court erred by finding against the appellants on the breach-of-fiduciary-duty claim.

### A. Breach-of-Fiduciary-Duty Claim

**{¶28}** In support of its award of injunctive relief, the trial court determined that the appellants had breached fiduciary duties to Vontz in their refusal to allow him to exercise his voting rights, resulting in irreparable harm. The elements for a breach-of-fiduciary-duty claim are (1) the existence of a duty arising from a fiduciary relationship, (2) the failure to observe the duty, and (3) an injury proximately resulting. *Hickerson v. Hickerson*, 3d Dist. Hancock No. 5-10-08, 2010-Ohio-4070, ¶ 24.

**{¶29}** The appellants argue that the trial court's judgment on the breach-of-fiduciary-duty claim was erroneous for several reasons. We begin with Miller, who argues that she did not, as Vontz alleged, owe a heightened fiduciary duty to him as

11

the other 50 percent shareholder. Miller also argues that if she owed a heightened fiduciary duty to him, she did not breach it when she failed to attend the special shareholder meetings. Finally, she argues that even if she did breach a fiduciary duty owed to him, that breach was not actionable because she had a legitimate business purpose for her tactics.

### 1. Fiduciary Duties of Shareholders in a Close Corporation

{¶30} It is undisputed that Heidelberg is a close corporation under Ohio law, even though the corporate documents do not reference R.C. 1701.591, which authorizes close-corporation agreements. A "close corporation" is generally characterized as a corporation with few shareholders who own shares that are not traded on a securities market. *Crosby v. Beam*, 47 Ohio St.3d 105, 107, 548 N.E.2d 217 (1989); *Estate of Schroer v. Stamco Supply, Inc.*, 19 Ohio App.3d 34, 36, 482 N.E.2d 975 (1st Dist.1984) ( superseded by statute on other grounds.) Additionally, a close corporation is typically marked by "an identity of management and ownership, * * * by restrictions on the free alienability of shares, * * * and * * * by its unmistakable resemblance to the partnership form." *Stamco* at 36-37. The Heidelberg shareholder agreement makes it particularly onerous for a shareholder to sell shares.

{¶31} Because a close corporation resembles a partnership, albeit with "advantages" of limited liability, *see id.* at 37, "the relationship between the shareholders must be one of trust, confidence and loyalty to thrive." *Crosby* at 108. Generally, Ohio courts impose a heightened fiduciary duty on majority or controlling shareholders in those close corporations to protect against abuse and oppression of minority shareholders. *Id.* at 109-110. This abuse or oppression includes a "squeeze-out" or "freeze-out"—the "manipulative use of corporate control to eliminate

minority shareholders, or to reduce their share of voting power or percentage of ownership assets, or otherwise unfairly deprive them of advantages or opportunities to which they are entitled." *Stamco* at 38; *see Crosby* at 109; 2 O'Neal and Thompson, *Oppression of Minority Shareholders and LLC Members* (2 Ed.1985, May 2016 update).

{¶32} The standard of duty owed by majority or controlling shareholders in a close corporation is the " 'utmost good faith and loyalty.' " *Crosby* at 108, quoting *Donahue v. Rodd Electrotype Co. of New England, Inc.*, 367 Mass. 578, 593, 328 N.E.2d 505 (1975). A breach of this heightened fiduciary duty is actionable, absent "any legitimate business purpose." *Crosby* at paragraph two of the syllabus, following *Wilkes v. Springside Nursing Home, Inc.*, 370 Mass. 842, 353 N.E.2d 657 (1976). Ultimately, a controlling shareholder in a close corporation may not "take[] action [she] is authorized to take which nevertheless operates to the disadvantage of the minority and was not taken in good faith and for a legitimate business purpose." *Busch v. Premier Integrated Med. Assocs., Ltd.*, 2d Dist. Montgomery No. 19364, 2003-Ohio-4709, ¶ 79, quoted in *Rhodes v. Paragon Molding, Ltd.*, 2d Dist. Montgomery No. 22491, 2011-Ohio-4295, ¶ 17.

{¶33} This duty of good faith in the context of a close corporation or partnership involves more than just honesty, as explained in *DiPasquale v. Costas*, 186 Ohio App.3d 121, 2010-Ohio-832, 926 N.E.2d 682 (2d Dist.):

> "A lack of good faith is the equivalent of bad faith, and bad faith, although not susceptible of concrete definition, embraces more than bad judgment or negligence. It imports a dishonest purpose, moral obliquity, conscious wrongdoing, breach of a known duty through some ulterior motive or ill will partaking

> of the nature of fraud. It also embraces actual intent to mislead
> or deceive another."

*Id.* at ¶ 127, quoting *Hoskins v. Aetna Life Ins. Co.*, 6 Ohio St.3d 272, 276, 452 N.E.2d 1315 (1983).

{¶34} Miller argues that because she owns only 50 percent of the voting shares, the trial court erred in determining that she owed a heightened fiduciary duty to Vontz. She argues that a 50 percent shareholder never owes a heightened fiduciary duty to the other 50 percent shareholder in a close corporation, citing *Herbert v. Porter*, 165 Ohio App.3d 217, 2006-Ohio-355, 845 N.E.2d 574, ¶ 13 (3d Dist.), and *Morgan v. Ramby*, 12th Dist. Warren No. CA2007-12-147, 2008-Ohio-6194, ¶ 21.

{¶35} But the Ohio Supreme Court in *Crosby* held that this heightened fiduciary duty applies to "majority or controlling" shareholders. *Crosby*, 47 Ohio St.3d 105, 548 N.E.2d 217, at paragraph two of the syllabus. And some appellate districts have interpreted this to mean that a heightened fiduciary duty applies when one shareholder exercises "control over the corporation to an extent that [the shareholder's] actions dominate[]," even though the shareholder is "not technically a majority owner." *McLaughlin v. Beeghly*, 84 Ohio App.3d 502, 506-507, 617 N.E.2d 703 (10th Dist.1992), cited in *Morrison v. Gugle*, 142 Ohio App.3d 244, 255, 755 N.E.2d 404 (10th Dist.2001). *Accord Heaton v. Rohl*, 193 Ohio App.3d 770, 2011-Ohio-2090, 954 N.E.2d 165, ¶ 4, 54 (11th Dist.); *Citizens Fed. Bank v. Chateau Constr. Co., Inc.*, 2d Dist. Montgomery No. 13902, 1994 Ohio App. LEXIS 167 (Jan. 19, 1994).

{¶36} In this case, the trial court found that Miller owed a heightened fiduciary duty to Vontz. Although Miller argues that the record contains no evidence

to support this finding, we disagree. The evidence shows that Miller exercised her influence and authority to such a degree that she in fact dominated Heidelberg's governing board. And Miller exerted her control by refusing to attend a shareholder meeting, thereby defeating the quorum requirement necessary for Vontz to exercise his right to vote for new directors. By doing so, Miller ensured that none of her family members would be replaced on the board, thus securing her continued control of the corporation.

{¶37} Because Miller so dominated the corporation that she was in control to the exclusion of Vontz, the unusual facts of this case demonstrated that Miller was the controlling shareholder, even though she owned only 50 percent of the voting shares. Miller's obligation to Vontz under this heightened fiduciary duty precluded her from "freez[ing]-out" Vontz from the "advantages [and] opportunities" to which he was entitled, including the power to vote. *Stamco*, 19 Ohio App.3d at 38, 482 N.E.2d 217.

{¶38} Next, Miller, citing to *Peter Schoenfeld Asset Mgmt. LLC v. Shaw*, Del. Ch. No. 20087-NC, 2003 Del. Ch. LEXIS 79 (July 10, 2003), argues that she could not have breached a heightened fiduciary duty because she had no statutory or contractual obligation to attend the shareholder meeting. But a fiduciary relationship may impose duties apart from statute or contract. *See Stone v. Davis*, 66 Ohio St.2d 74, 78, 419 N.E.2d 1094 (1981). Under her heightened duty of good faith and loyalty, she had an obligation of fairness to Vontz. Her duty required her to act for his benefit by protecting his right to vote for the election of new directors. She breached that duty because, as Vontz clearly demonstrated, he was unable to exercise his voting power due to a freeze-out by Miller.

{¶39} Finally, Miller argues that the trial court's decision cannot be sustained because the alleged breach was not actionable under the law when she acted with a "legitimate business purpose" in refusing to attend the special shareholder meetings noticed by Vontz. *See Crosby*, 47 Ohio St.3d 105, 548 N.E.2d 217, at paragraph two of the syllabus. But we do not believe the conduct here—disenfranchising a 50 percent shareholder to perpetuate one's own control and in the process causing the corporation to violate its own regulations and Ohio law relating to the holding of an annual meeting—is the kind of "legitimate business purpose" envisioned by the *Crosby* court.

{¶40} Thus, we hold that the trial court's determination that Miller breached her heightened fiduciary duty to Vontz is supported by the law and the facts. To the extent that Miller's first assignment of error challenges the propriety of the trial court's judgment on this basis, we overrule it.

## 2. Fiduciary Duties of Directors

{¶41} Next, we address the claim of the Miller Directors, as set forth in their first assignment of error, and in Hice's first assignment of error, that the court erred in determining that they had breached their fiduciary duty to Vontz as directors/ officers, resulting in shareholder oppression.

{¶42} Directors of a corporation are fiduciaries and are bound to exercise their power as directors in compliance with the duty of loyalty and the duty of care. These duties are codified in R.C. 1701.59(B). Thus, the duty of loyalty requires a director to "perform * * * in good faith, in a manner the director reasonably believes to be in or not opposed to the best interests of the corporation," while the duty of care requires a director to exercise "the care that an ordinarily prudent person in a like position would use under similar circumstances." R.C. 1701.59(B).

{¶43} Under Ohio law, the directors of a close corporation owe these duties to both the corporation and its shareholders. *See Thompson v. Cent. Ohio Cellular, Inc.*, 93 Ohio App.3d 530, 540, 639 N.E.2d 462 (8th Dist.1994); *Universal Real Estate Solutions, Inc. v. Snowden*, 2014-Ohio-5813, 26 N.E.3d 1272 (9th Dist.), ¶ 45. The plaintiff must prove a breach of duty by clear and convincing evidence. R.C. 1701.59(D)(1).

{¶44} Ohio courts heed the "business judgment rule" when analyzing a director's conduct. *Koos v. Cent. Ohio Cellular*, 94 Ohio App.3d 579, 589, 641 N.E.2d 265 (8th Dist.1994). Under the business-judgment rule, "directors carry the burden of showing a transaction is fair only after the plaintiff has made a prima facie case showing that the directors have acted in bad faith or without the requisite objectivity." *Radol v. Thomas*, 772 F.2d 244, 256 (6th Cir. 1985). In other words, the directors are presumed to have acted in good faith and in the best interests of the corporation. This "presumption" applies under Ohio law even for business decisions "affecting or involving a change in control or a termination of [a director's] services." 1986 Committee Comment interpreting former R.C. 1701.59(C), now codified as R.C. 1701.59(D).

{¶45} Although the trial court's letter opinion is not reflective of the exact analysis applied to this claim, the court did find that the appellants-directors had "refused" Vontz's request that, as directors, they schedule an annual shareholder meeting in accordance with the law, and that they had done so to prevent Vontz from exercising his right as a shareholder to elect directors. The court characterized the actions of the appellants-directors as "oppress[ive]."

{¶46} Initially, we note that under Ohio law and the relevant governing documents of the corporation, the corporation was to be governed by a board elected

17

by the majority of the voting shareholders. It is undisputed in this case that the majority of the voting shareholders no longer supported the current board as evidenced by Vontz's filing of this action.

{¶47} The appellants-directors argue that the record contains no evidence to rebut the presumption that they had acted in good faith.[2] In support of this assertion, they point to the trial court's comment that "no party has questioned the basic honesty of the other party." We interpret this to mean that the trial court found the appellants-directors had been very open about their oppression of Vontz, but that it also concluded they had not acted in good faith, when they refused to hold a shareholder meeting in accordance with the regulations for the purpose of thwarting a shareholder vote for new directors.

{¶48} In the corporate-director context, a lack of good faith includes conduct involving the "intentional dereliction of a duty, a conscious disregard for one's responsibilities." *In re Walt Disney Co. Derivative Litigation*, 906 A.2d 27, 66-67 (Del.2006) (quoting the chancellor's opinion to explain that " '[a] failure to act in good faith may be shown * * * where the fiduciary intentionally acts with a purpose other than that of advancing the best interests of the corporation, where the fiduciary acts with the intent to violate applicable positive law, or where the fiduciary

---

[2] We note that Delaware courts would not apply the business-judgment rule under these circumstances, and would instead apply a less deferential "compelling justification standard of review," where a board of directors has refused to act for the reason of preventing a 50 percent shareholder from exercising his voting rights. *See MM Cos., Inc. v. Liquid Audio, Inc.*, 813 A.2d 1118, 1128 (Del.2003). As one court put it, "the ordinary considerations to which the business judgment rule originally responded are simply not present in the shareholder voting context." *Blasius Indus., Inc. v. Atlas Corp.*, 564 A.2d 651, 659 (Del.Ch.1998). Instead, "a decision by the Board to act for the primary purpose of preventing the effectiveness of a shareholder vote inevitably involves the question who, as between the principal and agent, has authority with respect to a matter of internal corporate governance. * * * Judicial review of such action involves a determination of legal and equitable obligations of an agent towards his principal. This is not * * * a question that a court may leave to the agent finally to decide so long as he does so honestly and competently; that is, it may not be left to the agent's business judgment." *Id.* at 660.

intentionally fails to act in the face of a known duty to act, demonstrating a conscious disregard for his duties' "). Moreover, the duty of loyalty requires those in control of corporate processes to refrain from unfairly manipulating those processes to keep control. *See Schnell v. Chris-Craft Indus., Inc.*, 285 A.2d 437 (Del.1971).

{¶49} Not only did Vontz present sufficient evidence to rebut the presumption that the appellants-directors had acted in good faith, the appellants-directors failed to show that their decision to deny Vontz's request had been fair. The appellants-directors take the position that the trial court should have judged the fairness of their decision by whether Vontz was denied profits or whether other board members who were also officers had diverted company assets or the like, findings that the trial court did not make. But we conclude that their tactics to thwart corporate democracy were not fair to Vontz as a shareholder with 50 percent of the voting rights. Accordingly, we overrule the Miller Directors' first assignment of error and Hice's first assignment of error to the extent that they challenge the trial court's finding that the directors had breached their fiduciary duty to Vontz.

### 3. Claim against Hice as General Counsel

{¶50} In Hice's second, third, and fourth assignments of error, she challenges the trial court's judgment with respect to any judgment against her in the role as general counsel. Vontz alleged in his complaint that Hice had breached her fiduciary duty "to him" as general counsel. The trial court found for Vontz on this claim and ordered Hice to "treat both shareholders equally."[3]

{¶51} Hice contends that as general counsel, her client was the corporation, and her duty and allegiance ran to the corporation and not the shareholders. *See*

---

[3] We do not read the complaint as stating a claim for breach of fiduciary duty against the other Miller family "officers."

19

*Maloof v. Benesch, Friedlander, Coplan & Aronoff*, 8th Dist. Cuyahoga No. 84006, 2004-Ohio-6285, ¶ 27. We agree.

{¶52} As general counsel, Hice owed a fiduciary duty to the corporation, but not to Vontz as an individual shareholder. Therefore, the trial court erred by finding for Vontz on his claim against Hice as general counsel. Accordingly, we reverse that part of the trial court's judgment and direct the trial court to strike from the injunctive order the mandate that "Hice * * * shall treat both shareholders equally henceforth." Accordingly, we sustain Hice's second, third, and fourth assignments of error.

## B. Appropriateness of Injunctive Relief

{¶53} The question remains as to whether the injunctive relief awarded was warranted in light of the appellants' breach of fiduciary duties.

{¶54} "Injunction is an extraordinary remedy equitable in nature, and its issuance may not be demanded as a matter of strict right; the allowance of an injunction rests in the sound discretion of the court and depends on the facts and circumstances surrounding the particular case." *Perkins v. Quaker City*, 165 Ohio St. 120, 133 N.E.2d 595 (1956), syllabus. "Whether it will be granted depends largely on the character of the case, the peculiar facts involved and other pertinent factors, among which are those relating to public policy and convenience." *Id.* at 125.

{¶55} An abuse of discretion contemplates "an attitude" by the court "that is unreasonable, arbitrary or unconscionable." *AAAA Ents., Inc. v. River Place Community Urban Redev. Corp.*, 50 Ohio St.3d 157, 161, 553 N.E.2d 597 (1990). An unreasonable decision is one that is not supported by a "sound reasoning process." *Id.*

{¶56} In this case, the trial court found that Vontz's concerns were compelling, and that "[t]he implications for not [awarding injunctive relief] would be disastrous for the plaintiff in specific and Ohio law regarding closely held corporations in general." Essentially, the court found, based on the evidence, that the appellants would retain "perpetual control over the company." We hold that the trial court was within its discretion in determining that the equities weighed in favor of Vontz, and that some injunctive relief was warranted in this case. *See Crosby*, 47 Ohio St.3d at 108, 548 N.E.2d 217, quoting *United States v. Byrum*, 408 U.S. 125, 137-38, 92 S.Ct. 2382, 33 L.Ed.2d 238, fn. 11 (1972) (" 'A court of equity will grant appropriate relief where the majority or dominant group of shareholders act in their own interest or in the interest of others so as to oppress the minority or commit fraud upon their rights.' ") The terms of the court's order must be modified, however, as discussed below.

{¶57} It is well-settled that a party seeking equitable relief in the form of an injunction must show by clear and convincing evidence that the injunction is necessary to prevent a great or irreparable injury for which the party does not have an adequate remedy at law. *Dayton Metro. Hous. Auth. v. Dayton Human Relations Council*, 81 Ohio App.3d 436, 442, 611 N.E.2d 384 (2d Dist.1992), cited in *Stoneham*, 140 Ohio App.3d 260, 267-268, 747 N.E.2d 268; *see Hritz v. United Steel Workers of Am., AFL CIO*, 12th District Warren No. CA2002-10-108, 2003-Ohio-5284, ¶ 44.

{¶58} We first address the Miller Directors' argument that their conduct as directors could not have been the cause of any "irreparable harm" to Vontz. They contend that Vontz as co-chairman of the board and president was authorized to call—and did call—a special meeting for the election of directors at which he could

exercise his right to vote. Furthermore, they emphasize that as directors they had no authority to require Miller's attendance at such a meeting.

{¶59} We are persuaded in part. Because Vontz can call the special shareholder meeting for the election of directors, Vontz failed to establish the irreparable harm necessary to support an injunctive order requiring the board to schedule the shareholder meeting. Therefore, the trial court must strike from its injunctive order the language and the related provisions requiring the board to schedule a shareholder meeting. Accordingly, we sustain the Miller Directors' first assignment of error to the extent that it presents this argument.

{¶60} Next, we address Miller's challenge to the trial court's order to the extent that it compels her to attend a shareholder meeting for the election of directors. Miller argues that the trial court cannot fashion a remedy where the Ohio General Assembly has not provided one. In other words, because she is not required by statute to attend a shareholder meeting, the court cannot order her to do so. Miller, quoting *Chomczynski v. Cinna Scientific, Inc.*, 1st Dist. Hamilton No. C-010170, 2002-Ohio-4605, ¶ 9, insists that a corporation as legal entity is a creature of statute and "can act in no other way than set forth by statute." While that is a correct statement of the law, Vontz, unlike the plaintiff in *Chomczynski*, invoked the equity jurisdiction of the trial court to enforce his rights as a shareholder. *See id.* at ¶ 19.

{¶61} Generally, corporate statutes do not displace all common-law equitable powers of the court. *See Danzinger*, 103 Ohio St.3d 337, 2004-Ohio-5227, 815 N.E.2d 658, syllabus (holding that "shareholders have a right at common law to inspect the records of a wholly owned subsidiary of the corporation in which they own stock when the parent corporation so controls and dominates the subsidiary

22

that the separate corporate existence of the subsidiary should be disregarded"); Bahls, *Resolving Shareholder Dissension: Selection of the Appropriate Equitable Remedy*, 15 J.Corp.L., 285, 294 (1990) ("Modern corporate legislation is designed to provide courts with powers that supplement their inherent equitable powers, rather than diminish their historic powers.")

{¶62} Miller also argues that there is no precedent for requiring her to attend a shareholder meeting. The Ohio Supreme Court has held, however, that " '[p]recedents in equity are a guide to the principles of equity, but the absence of a precedent for the particular relief sought is no bar to action.' " *Civil Serv. Personnel Assoc. v. Akron*, 48 Ohio St.2d 25, 28, 356 N.E.2d 300 (1976), quoting McClintock on Equity, (2d Ed.1948), 77. But we are persuaded that the trial court erred by incorporating terms in its injunctive order that were not narrowly tailored to remedy the irreparable harm at issue here. *See Eastwood Mall v. Slanco*, 68 Ohio St.3d 221, 224, 626 N.E.2d 59 (1994) ("Equity requires that an injunction should be narrowly tailored to prohibit only the complained of activities.") The trial court should have cured the irreparable harm resulting from Miller's manipulation of the regulations to suppress Vontz's voting rights without requiring Miller to attend an annual shareholder meeting.

{¶63} The parties, at trial and on appeal, argued that Regulation 2.07 of the Heidelberg Code of Regulations required the attendance of a majority of the voting shareholders to establish a quorum, without which no new directors could be elected at the shareholder meeting for the election of directors. Because of Miller's oppressive conduct, which resulted in irreparable harm to Vontz in that he could not exercise his voting rights, equity would require that the quorum requirement of Regulation 2.07 not apply when Vontz calls another special shareholder meeting for

the election of directors. Instead, a quorum requirement should be applied that sets quorum at the number of voting shareholders who attend that meeting, and when quorum is met, the election of directors may then proceed as authorized under Regulation 2.07.

{¶64} Other states have enacted legislation to remedy the oppression of voting rights under similar circumstances. For example, a New York statute gives shareholders the right under specific circumstances to call a special meeting for the election of directors and provides that "[a]t * * * such a special meeting * * * the shareholders attending, in person or by proxy, and entitled to vote in an election of directors shall constitute a quorum for the purpose of electing directors, but not for the transaction of any other business." N.Y.Business Corporation Law 603. We direct the trial court on remand to incorporate similar language into its modified injunctive order. Thus, Miller may choose not to attend the shareholder meeting for the election of directors, but her failure to attend will not perpetuate the suppression of Vontz's shareholder rights.

{¶65} To the extent that Miller's first assignment of error challenges the injunctive order because it requires her to attend the shareholder meeting for the election of directors it is sustained. Thus, the trial court must modify the order accordingly.

{¶66} Miller also challenges the injunctive order because it requires the board to be "equalized." First, she argues that the board cannot be equalized because it consists of seven seats, and the parties will only be able to elect three directors each and will disagree on the seventh. The result, she claims, will be a failed election and the current board will carry over, in accordance with Ohio law and the corporate

regulations. But Vontz takes the position, which is supported by our record,[4] that the election of six directors will be valid.

{¶67} Second, Miller argues, citing to *Humphrys v. Winous Co.*, 165 Ohio St. 45, 133 N.E.2d 780 (1956), that the requirement of equalization will give Vontz more power than Ohio law allows. In *Winous*, the court held that the right of cumulative voting "confers upon a minority shareholder only a right to vote cumulatively and does not ensure minority representation on the board of directors by the exercise of that right." *Id.* at paragraph three of the syllabus. We interpret *Winous* to support Miller's argument, and as a result we sustain Miller's second assignment of error. The irreparable harm to be remedied here is the suppression of Vontz's right to vote. As a result, we instruct the trial court to strike the language of the injunctive order related to the equalization of the board.

{¶68} For the same reason, and to provide additional clarity, we also order the trial court to strike the language of the injunctive order instructing the parties "to work out the directors to be removed." Hice challenges this part of the injunctive order, along with the mandate that she "treat both shareholders equally," in her fourth assignment of error, which we sustain. As modified, the injunctive order should comply with Civ.R. 65(D), which requires every order granting an injunction to be specific and clear.

{¶69} Finally, we address the appellants' challenge to the provision of the injunctive order that relates to the payment of attorney fees. The trial court included in its order a statement that each party is to pay its own attorney fees. The appellants argue that if the trial court intended by this language to deny them the right of indemnification of their attorney fees by the corporation, then the trial court

---

[4] Our record does not include corporate by-laws, if any exist.

erred. But we do not read this statement to be a ruling on the corporation's obligation to indemnify the Miller family directors and officers for attorney fees, as the issue of indemnification was never an issue in the case. Accordingly, we overrule the relevant assignments of error (the Miller Directors' fourth and Hice's seventh) on the grounds that the error assigned is not demonstrated in the record.

{¶70} Finally, the appellants seek reversal of the injunctive order for reasons related to the breach-of-contract and violation-of-corporate-requirement claims. Our disposition of the challenges addressed above render moot the challenges on appeal related to the trial court's grant of relief to Vontz based on those claims. Therefore, we do not reach the merits of those claims. *See* App.R. 12(A)(3).

### III. Conclusion

{¶71} To summarize, the trial court erred by determining that Hice as general counsel breached her fiduciary duty to Vontz, by determining that Vontz was "irreparably harmed" by the board's refusal to schedule a shareholder meeting for the election of directors, and by incorporating terms in its injunctive order that were not narrowly tailored to remedy the irreparable harm caused by Miller's breach of her heightened fiduciary duty as a controlling shareholder. For these reasons, we reverse the trial court's judgment in part and remand for further proceedings consistent with this opinion and the law. In all other respects, we affirm the trial court's judgment.

Judgment affirmed in part, reversed in part, and cause remanded.

DEWINE and MOCK, JJ., concur.

Please note:

The court has recorded its own entry on the date of the release of this opinion.