[Cite as *GEICO Ins. Co. v. Glendale Body Shop, Inc.*, 2026-Ohio-899.]

# IN THE COURT OF APPEALS
# FIRST APPELLATE DISTRICT OF OHIO
# HAMILTON COUNTY, OHIO

| | | |
|---|---|---|
| GEICO INSURANCE COMPANY, | : | APPEAL NO. C-250278 |
| | | TRIAL NO. A-2404041 |
| Plaintiff-Appellee, | : | |
| vs. | : | |
| GLENDALE BODY SHOP, INC., | : | *JUDGMENT ENTRY* |
| Defendant-Appellant. | : | |

This cause was heard upon the appeal, the record, the briefs, and arguments.

For the reasons set forth in the Opinion filed this date, the judgment of the trial court is affirmed.

Further, the court holds that there were reasonable grounds for this appeal, allows no penalty, and orders that costs be taxed under App.R. 24.

The court further orders that (1) a copy of this Judgment with a copy of the Opinion attached constitutes the mandate, and (2) the mandate be sent to the trial court for execution under App.R. 27.

**To the clerk:**

**Enter upon the journal of the court on 3/18/2026 per order of the court.**

**By:**_____
      **Administrative Judge**

[Cite as *GEICO Ins. Co. v. Glendale Body Shop, Inc.*, 2026-Ohio-899.]

# IN THE COURT OF APPEALS
# FIRST APPELLATE DISTRICT OF OHIO
# HAMILTON COUNTY, OHIO


| | | | |
|---|---|---|---|
| GEICO INSURANCE COMPANY, | : | APPEAL NO. | C-250278 |
| | | TRIAL NO. | A-2404041 |
| Plaintiff-Appellee, | : | | |
| vs. | : | | |
| | | *O P I N I O N* | |
| GLENDALE BODY SHOP, INC., | : | | |
| Defendant-Appellant. | : | | |


Civil Appeal From: Hamilton County Court of Common Pleas

Judgment Appealed From Is: Affirmed

Date of Judgment Entry on Appeal: March 18, 2026


*Law Office of William J. Moran, Jr.*, and *William J. Moran, Jr.*, for Plaintiff-Appellee,

*Becker & Cade*, *Dennis A. Becker* and *Justin S. Becker*, for Defendant-Appellant.

**ZAYAS, Presiding Judge.**

{¶1} This appeal presents a question of the applicability of R.C. 4513.70 to a dispute between an insurer and a car repair shop and the evidence supporting the trial court's determination of reasonable charges under this section. Defendant-appellant Glendale Body Shop, Inc., ("GBS")—the car repair shop—appeals from the judgment of the trial court determining the reasonable charges under the statute, raising two assignments of error. In the first assignment of error, GBS argues that the trial court erred by applying R.C. 4513.70 to the transaction at issue as GBS is not a "towing service" or a "storage facility." In the second assignment of error, GBS argues that the trial court abused its discretion when determining that storage should only be charged for ten days "with no reasonable justification for that determination." For the reasons set forth below, we overrule the assignments of error and affirm the judgment of the trial court.

## I. Background

{¶2} This cause originated in the municipal court when plaintiff-appellee GEICO Insurance Company ("GEICO") filed a complaint against GBS on March 4, 2024. In the complaint, GEICO alleged that it was the insurer of Jennifer Miranda ("the insured") and that, on or about January 11, 2024, GBS "towed and stored" a 2014 Mini Cooper ("the car") owned by the insured. GBS later submitted a bill to GEICO and the insured. GEICO paid the "undisputed amount" of the bill the following day. GEICO then initiated this action under R.C. 4513.70 to "dispute and object to the reasonableness of the unpaid balance of [GBS]'s bill for services," and to seek recovery of the car.

{¶3} In response, GBS moved to dismiss the complaint for failure to state a claim, disputing whether the complaint set forth the requisite facts to support a claim

under R.C. 4513.70. After responsive briefing, GEICO amended the complaint, adding more specific facts under R.C. 4513.70. Thereafter, GBS answered the amended complaint and filed a counterclaim against GEICO for unpaid expenses, in excess of $25,000, incurred in performing services to the car "in order to provide a repair evaluation and estimate."

{¶4} GEICO answered the counterclaim and requested a "hearing on reasonableness" of the charges, given that GBS was claiming daily expenses in storing the car and each party had a duty to mitigate damages. However, because the cause now exceeded the monetary jurisdiction of the municipal court, the matter was transferred to the court of common pleas.

{¶5} A hearing was held in front of the common pleas court on February 13, 2025. The transcript reflects an initial disagreement between counsel, and also the court, as to the purpose of the hearing. Counsel for GEICO suggested that the purpose of the hearing was to determine the amount of damages owed. Counsel for GBS suggested that the purpose of the hearing was to determine "if the statute applies or not, the towing and storage statute." The court indicated that it "already ruled on that."[1] Nevertheless, after GBS's counsel suggested that GBS was never able to present evidence on the issue, the court said, "We can do both [issues]." However, because counsel for GBS then indicated that he was not expecting to address damages that day, the court said, "If I decide the statute applies, we will continue [the cause] for a hearing on damages then." So, the trial court proceeded to consider the applicability of the statute.

---

[1] The record suggests that the trial court may have held a hearing in January, prior to the February hearing. However, no transcript appears in the record, and the hearing did not result in any entry from the court.

{¶6} GEICO presented the testimony of Dustin McCue, a damages supervisor at GEICO. McCue testified that the insured's car was damaged in Kentucky, and she "was referred to bring the vehicle to [GBS] to work on [her car]." So, the insured "had someone tow" the car to GBS and then GBS paid the charges for the tow. GEICO ultimately received an invoice from GBS that included "pretty common standard charges," such as a gate fee, an administrative fee, and tear-down and storage charges. GBS billed for towing and storage. GBS did not repair the vehicle because the car was ultimately determined to be a total loss. McCue testified that, typically, storage charges do not begin until the vehicle is determined to be a total loss.

{¶7} GBS presented the testimony of Tyler Damron, the shop manager at GBS. He testified that GBS has a contract with the insured for repairs to the vehicle. He denied that GBS towed the insured's car. He said, "We hired another company to transport the vehicle." When asked what the "typical process" is when GBS receives a new vehicle for repairs, he answered, "So once a vehicle arrives we will take a general look at the car, see how bad the damages are. If it is something that is going to be a blatant obvious total loss, we won't do much to it." Damron testified that the damages to the insured's car "appeared minor." However, the car was ultimately determined to be a total loss. When asked if GBS was hired by the insured "as a storage facility," he responded, "We were not." When asked if GBS is ever hired "as a storage facility," he answered, "We are not. We are hired as a repair shop." He denied that GBS ever receives vehicles from a for-hire towing company for the purpose of storage.

{¶8} At the conclusion of the hearing, the trial court said, "I think the statute applies. We will just have a hearing on damages." The trial court thereafter entered an order finding that R.C. 4513.70 was applicable to the cause. The court said that it heard testimony from the two witnesses and determined that GBS "can be

5

consider[ed] a Storage Facility and/or a Towing Service" under R.C. 4513.70(D)(1) and (2).

**{¶9}** The trial court then held the damages hearing on March 6, 2025. GEICO again presented the testimony of McCue. McCue testified that GEICO received an invoice—dated February 19, 2024—from GBS in the amount of $8,466.91. Of this amount, McCue determined that $2,579.65 was reasonable. He "cut a check," and provided this amount to GBS—hand-delivered—on February 20, 2024, which was shortly after the car was determined to be a total loss. After the check was delivered, McCue demanded return of the car but GBS "did not release the vehicle to [GEICO]." To his knowledge, the car remained with GBS at the time of the hearing, resulting in a recent storage bill of over $25,000.

**{¶10}** GBS again presented the testimony of Damron. When asked to describe the process when he is contacted for a vehicle repair, he testified,

> So when a customer calls us for repair of a vehicle, we usually like to ask what the damages are. If they indicate that it's severe damage and the vehicle needs towed, or if there is any reason the vehicle is not drivable, we will discuss it with them. From there, we usually will send them authorization paperwork, contract paperwork that they will sign, send back to us, and then we will dispatch. If it is a towable vehicle or a vehicle that has to be towed, we'll dispatch a tow; otherwise, we will ask the customer to stop by with a drivable vehicle for us to inspect it.

**{¶11}** Ninety-eight percent of the time, GBS uses "Dave Hyde's Towing Service" when it dispatches a tow. Damron testified that the contract for repairs between GBS and the insured was based on the initial estimate that the insured received from her "inside adjustor." GBS "set up the tow" for the insured's car and

6

hired "Dave Hyde's Towing." Damron agreed that GBS marks up the towing bills at a "30% margin, give or take," for facilitating and organizing the tow.

{¶12} Damron testified that the "primary business" of GBS is "a body shop, repair facility." When asked if there is a storage charge if a vehicle goes to GBS for repair and the vehicle is repaired, he said, "No. If the vehicles are repaired, we don't charge storage." Rather, storage only "arises" if the vehicle is declared a total loss or repairs are canceled for any reason. When asked if GBS accepts any vehicles for the purpose of storage separate from the vehicle being brought to GBS for repair, he answered, "We do not." He again confirmed that GBS does not itself tow vehicles.

{¶13} GBS further presented the testimony of Sergey Kapitula from Frameworks Collision, LLC. Kapitula testified regarding his experience working with insurance companies and payment of invoices in similar situations.

{¶14} The trial court thereafter entered an order determining the reasonableness of GBS's charges. The court first found that GBS's "miscellaneous charges" and the fees for work done were reasonable. The court further found that the towing fees of $1,911.78 and storage fees of $125 per day were reasonable. However, the court found that the amount of time that GBS stored the vehicle was unreasonable. The court said,

> There is no reason to believe that it should take over a month to determine if a vehicle was a total loss. Accordingly, the Court finds that the fees in [GBS]'s invoice are reasonable, but modifies the number of days for storage from 37 days to 10 days. A determination that the vehicle was a total loss, unless good cause was shown otherwise, should have occurred within 10 days of the vehicle arriving at [GBS].

{¶15} As a result, the trial court ordered GEICO to pay $4,818.92, minus the

7

amount already paid for the undisputed charges ($2,579.65), resulting in a balance of $2,239.57. Beyond that, the court declined to impose a penalty on GBS under R.C. 4512.70(B). GBS now appeals, raising two assignments of error.

## II. *First Assignment of Error*

{¶16}  In the first assignment of error, GBS argues that the trial court erred by applying R.C. 4513.70 to a transaction governed by a repair contract and misclassifying GBS as a towing service and/or storage facility.

{¶17}  This court reviews statutory interpretation questions de novo. *E.g.*, *435 Elm Invest., LLC v. CBD Invests. Ltd. Partnership I*, 2020-Ohio-943, ¶ 8 (1st Dist.), citing *Vontz v. Miller*, 2016-Ohio-8477, ¶ 26 (1st Dist.) ("'[W]e review de novo issues of law upon which the trial court based its decision, such as the sufficiency of the evidence to support a judgment and the interpretation of . . . statutory provisions.'").

{¶18}  R.C. 4513.70(A) states,

> (1) An insurance company may commence a civil action against a towing service or storage facility on its own behalf, on behalf of the holder of a policy of automobile insurance, or on behalf of a motor vehicle owner for either or both of the following reasons:
>
> > (a) The recovery of a motor vehicle that has been towed or stored and for which a claim has been filed with the insurance company;
> >
> > (b) Objecting to the amount billed by the towing service or storage facility.
>
> (2) The insurance company shall file the action in the municipal or county court with territorial jurisdiction over the location from which the vehicle was towed or stored within thirty days of

8

receipt of the bill for services from the towing service or storage facility. If the insurance company objects to the amount billed by the towing service or storage facility, the complaint shall include the amount of the bill that is undisputed and the reasons the insurance company objects to the remainder of the bill. The insurance company shall file, along with the complaint, a copy of the bill and any evidence supporting the assertion that the billed amount is unreasonable. If the insurance company seeks the recovery of the vehicle, the insurance company shall pay to the towing service or storage facility the undisputed amount of the bill.

{¶19} Under the plain language of R.C. 4513.70(A)(1), the statute only authorizes an insurance company to commence an action against "a towing service or storage facility." These terms are defined by the statute.

{¶20} Under R.C. 4513.70(D)(1), "storage facility" "means any place to which a for-hire motor carrier delivers a towed vehicle for storage."

{¶21} Under R.C. 4513.70(D)(2), "towing service" "means any for-hire motor carrier that tows motor vehicles."

{¶22} Under the plain language of these provisions, the statute is only applicable against either (1) a *for-hire motor carrier* that tows motor vehicles, or (2) any place to which such a carrier delivers a vehicle *for storage*. Thus, to determine whether the statute is applicable against GBS, it is necessary to determine whether GBS is a "for-hire motor carrier" and/or whether the car was delivered to GBS "for storage."

### A. Whether GBS is a For-Hire Motor Carrier

**{¶23}** Under R.C. 4513.70(A) and (D), the statute is first applicable against "any for-hire motor carrier that tows motor vehicles."

**{¶24}** "For hire" is defined as "available for use or service in return for payment." *Mirriam-Webster Online*, https://www.merriam-webster.com/dictionary/for%20hire (accessed Dec. 11, 2025) [https://perma.cc/AA92-H7A2].

**{¶25}** "Carrier" is defined as "one that carries," and "an individual or organization engaged in transporting passengers or goods for hire." *Mirriam-Webster Online*, https://www.merriam-webster.com/dictionary/carrier (accessed Dec. 11, 2025) [https://perma.cc/W6EY-WXLC].

**{¶26}** Thus, a for-hire carrier is one that is available for use or service to carry or transport goods in exchange for payment.

**{¶27}** Accordingly, a "for-hire motor carrier that tows motor vehicles" would be one that is available for hire to carry or transport motor vehicles by motor vehicle in exchange for payment.

**{¶28}** We note that a "for-hire motor carrier" is not defined in R.C. Title 45, which encompasses the statute at issue. However, a "for-hire motor carrier" is defined in R.C. Title 49 within the context of determining what is a "public utility," and this definition supports the interpretation that a *for-hire motor carrier* must actually be a person or entity hired to carry something. *See* R.C. 4905.03(B) and 4921.01(B) (each stating that a person is a "for-hire motor carrier" "when engaged in the business of transporting persons or property by motor vehicle for compensation . . . .").

**{¶29}** GBS argues that it is not a for-hire motor carrier that tows motor vehicles where the car was towed to GBS, but not by GBS, pursuant to a contract for the repair of the vehicle. We agree.

**{¶30}** The evidence shows that GBS was hired to *facilitate* having the car towed from Kentucky. It does not show that GBS was actually hired to carry or transport the car, or that GBS is available for hire as a towing service. Rather, GBS was simply paid to facilitate the towing of the car. Any payment beyond that was reimbursement for the amount charged by the towing service that actually transported the vehicle from Kentucky. Accordingly, the evidence does not support that GBS was a "for-hire motor carrier" for the purposes of R.C. 4513.70.

### B. *Whether the Car Was Delivered to GBS for Storage*

**{¶31}** Under R.C. 4513.70(A) and (D), the statute is also applicable to "any place for which a for-hire motor carrier delivers a towed vehicle for storage."

**{¶32}** GBS argues that the car was not delivered to GBS for storage. Rather, it was delivered to GBS for repairs, and the statute is not applicable to a repair facility. We disagree.

**{¶33}** We acknowledge that other provisions of R.C. Ch. 4513 discuss and distinguish between a towing service, a storage facility, and a repair facility. *See* R.C. 4513.602 (defining a "repair facility" as "any business with which a person has entered into an agreement to repair a vehicle."); R.C. 4513.68 ("The towing service shall not submit such an estimate to any repair facility or storage facility to which the motor vehicle is transported unless the operator of the motor vehicle meets one of the conditions specified above.").

**{¶34}** However, when reviewing R.C. 4513.70 within the context of R.C. Ch. 4513, we are not convinced that a car repair shop cannot function as both a repair facility and a storage facility—depending on the circumstances in which it receives a vehicle—for purposes of R.C. 4513.70.

**{¶35}** Here, GBS maintains that it did not receive the vehicle for storage. Yet,

11

a review of the evidence reveals that GBS charged storage fees starting on the day that it received the vehicle, despite the testimony stating that GBS typically only charges for storage after a total-loss determination.  Further, Damron testified that, with other GEICO claims, GBS has received vehicles that are "an obvious total loss."  He said,

> [W]ith Geico claims, other Geico claims, if they are an obvious total loss, I'll call the supervisor that was just testifying and say, hey, this car is obviously a total loss.  Would you guys like to come out?  And we will give them a credit of two to three day[s] of storage free, no charges.

**{¶36}**  Even further, a review of the contract for repairs in this case reveals that the "repair costs" outlined in the contract expressly include storage fees.

**{¶37}**  Thus, while it may be true that the evidence does not show that GBS received the vehicle *solely* for storage, we cannot say that the evidence does not support that GBS received the insured's car in this case for storage.

**{¶38}**  Therefore, we hold that, in this case, GBS is a "storage facility" for purposes of R.C. 4513.70.  Accordingly, we overrule the first assignment of error.

### III.  Second Assignment of Error

**{¶39}**  In the second assignment of error, GBS challenges the trial court's determination as to the "reasonable" duration of storage charges.

**{¶40}**  R.C. 4513.70(C) states,

> The court shall make a determination as to whether the amount charged by the towing service or storage facility is unreasonable.  If the court determines that the amount is reasonable, the court shall order the insurance company to pay the amount billed minus the undisputed amount that the insurance company paid to the towing service or storage facility under division (B) of this section if a payment was made

under that division. If the court determines that the amount charged was unreasonable, the court shall determine a reasonable amount and order the insurance company to pay that amount minus the undisputed amount that the insurance company paid to the towing service or storage facility under division (B) of this section if a payment was made under that division. The court also may require either party to pay any additional amount and may impose any monetary penalties the court determines to be appropriate.

**{¶41}** We review the trial court's determinations under the statute for an abuse of discretion. *See generally Johnson v. Abdullah*, 2021-Ohio-3304, ¶ 37 ("'The concept of "abuse of discretion" as the basis for determining "error" of the trial court connotes the right to exercise sound discretion.'"); *State v. Weaver*, 2022-Ohio-4371, ¶ 24, citing *State v. Jenkins*, 15 Ohio St.3d 164, 222 (1984) ("The '"term discretion itself involves the idea of choice, of an exercise of will, of a determination made between competing considerations."'"); *S.M. v. T.G.*, 2025-Ohio-1448, ¶ 21 (8th Dist.), citing *Rohde v. Farmer*, 23 Ohio St.2d 82, 89 (1970) ("[A]n abuse-of-discretion standard implies that trial courts have discretion to abuse."). An abuse of discretion occurs when a court exercises its judgment, in an unwarranted way, in regard to a matter over which it has discretionary authority. *Johnson* at ¶ 35.

**{¶42}** The trial court found that the time that GBS stored the vehicle was unreasonable as there was no reason to believe that it should have taken over a month to determine if the vehicle was a total loss. The trial court further found that the ten-day storage charge was reasonable given that the determination of a total loss should have occurred within ten days, absent good cause showing otherwise.

**{¶43}** GBS argues that the trial court abused its discretion when limiting the

storage charges owed to ten days when there was no evidentiary basis to do so and despite there being a valid executed contract between GBS and the insured that clearly outlined the storage fees the insured would be responsible for.

**{¶44}** However, a review of the record reveals that there is evidence supporting the trial court's determination that ten days of storage was reasonable. GEICO is not a party to the contract between GBS and the insured. Both McCue and Damron testified that, typically, "storage" is not charged during repairs and does not begin until there is a determination that a vehicle is a total loss. According to McCue, the total-loss determination occurred on February 18, and GEICO delivered a check for the undisputed bill amount on February 20, the same day it demanded return of the vehicle. McCue further testified that the ten days of storage arises from the date of the total-loss determination with a "few extra days" covered in the beginning. This is consistent with plaintiff's exhibit No. 2, which shows that GEICO tendered payment for storage charges from "2/12–2/21."

**{¶45}** Therefore, based on the evidence presented, we cannot say that the trial court abused its discretion when determining reasonable storage expenses under the statute. Consequently, we overrule the second assignment of error.

### *IV. Conclusion*

**{¶46}** For the foregoing reasons, we overrule the assignments of error and affirm the judgment of the trial court.

Judgment affirmed.

**CROUSE** and **BOCK, JJ.,** concur.