[Cite as *David Rentals, L.L.C. v. Virginia Woods, L.L.C.*, 2024-Ohio-1446.]

# IN THE COURT OF APPEALS
# FIRST APPELLATE DISTRICT OF OHIO
# HAMILTON COUNTY, OHIO

| | | |
|---|---|---|
| DAVID RENTALS, LLC, d.b.a. RAW PROPERTY MANAGEMENT, | : | APPEAL NO. C-230374 |
| | | TRIAL NO. A-1703941 |
| | : | |
| Plaintiff-Appellee/Cross-Appellant, | : | |
| | | *O P I N I O N.* |
| vs. | : | |
| VIRGINIA WOODS, LLC, | : | |
| and | : | |
| CYPRESS WOODS, LLC, | : | |
| Defendants-Appellants/Cross-Appellees, | : | |
| | : | |
| and | : | |
| LAKONA HOLDINGS, LTD, et al., | : | |
| Defendants. | : | |

Civil Appeal From: Hamilton County Court of Common Pleas

Judgment Appealed From Is: Affirmed in Part, Reversed in Part, and Cause Remanded

Date of Judgment Entry on Appeal: April 17, 2024

*Flagel & Papakirk, LLC, Gregory E. Hull* and *James Papakirk*, for Plaintiff-Appellee/Cross-Appellant,

*Finney Law Firm, Christopher P. Finney* and *Casey A. Jones*, for Defendants-Appellants/Cross-Appellees.

**WINKLER, Judge.**

{¶1} In this property-management dispute, defendants-appellants/cross-appellees Virginia Woods, LLC, and Cypress Woods, LLC, (collectively "Virginia Woods") appeal the judgment of the trial court ordering them to pay damages and attorney's fees to their former property-management company, plaintiff-appellee/cross-appellant David Rentals, LLC, doing business as RAW Property Management ("RAW"). Virginia Woods also appeals the dismissal of its counterclaims for slander of title and breach of fiduciary duty. RAW cross-appeals that portion of the trial court's judgment determining that RAW owes damages to Virginia Woods for mishandled security deposits and undelivered pest-control materials and failing to award prejudgment interest. For the reasons set forth below, we reverse the trial court's judgment dismissing Virginia Woods' slander-of-title counterclaim and its judgment awarding damages to RAW, which failed to show that it acted as a licensed real estate broker under R.C. 4735.21.

## Background

{¶2} In 2014, RAW entered into a property-management contract ("PMC") with Virginia Woods regarding the management of two, separate apartment complexes located on Rockdale Avenue. The relationship between RAW and Virginia Woods eventually deteriorated, and RAW filed a mechanic's lien against Virginia Woods' property in September 2016. In July 2017, RAW filed a complaint against Virginia Woods. Relevant to this appeal, RAW alleged that Virginia Woods had failed to pay RAW management fees as required under the PMC, and that Virginia Woods terminated the PMC without the required 60 days' notice.

3

{¶3} Virginia Woods filed a counterclaim against RAW, which alleged relevant to this appeal, that RAW had breached the PMC by failing to deposit all tenants' security deposits and rent into the appropriate account owned by Virginia Woods and by hiring an onsite caretaker for the property. Virginia Woods also filed counterclaims against RAW for breach of fiduciary duty and for slander of title with regard to RAW's mechanic's lien.

{¶4} Prior to trial, the trial court dismissed Virginia Woods' slander-of-title counterclaim. Virginia Woods then made a cash deposit with the clerk of courts to release RAW's mechanic's lien and filed a motion for leave to file a supplemental counterclaim for slander of title. The trial court permitted Virginia Woods to file the supplemental counterclaim, and the trial court entered an order releasing the mechanic's lien.

{¶5} The matter eventually proceeded to trial before the magistrate. During trial, RAW filed a motion to dismiss Virginia Woods' supplemental slander-of-title counterclaim on statute-of-limitations grounds, which the trial court granted. At the close of all evidence, the magistrate determined that Virginia Woods materially breached the PMC by terminating it without giving RAW the required 60 days' notice. As a result, the magistrate determined that RAW was entitled to two months of property-management fees under Section 10 of the PMC, in the amount of $5,390. The magistrate further determined that RAW was entitled to recover $33,064.28 from Virginia Woods, LLC, and $898.38 from Cypress Woods, LLC, for unpaid fees and commissions. With respect to Virginia Woods' counterclaims, the magistrate determined that RAW had wrongfully withheld security deposits from Virginia Woods in the amount of $10,120, and that RAW owed Virginia Woods $685 for pest-control

4

materials that RAW failed to deliver.  The magistrate also awarded RAW its attorney's fees as provided for in the PMC after the magistrate found RAW to be the prevailing party in the action.

{¶6}    Virginia Woods and RAW filed objections to the magistrate's decision. The trial court overruled the parties' objections and adopted the decision of the magistrate.  Virginia Woods appealed and RAW cross-appealed.  This court dismissed the appeal and cross-appeal for lack of a final, appealable order.   The trial court entered another order overruling the objections and adopting the magistrate's decision.  The parties again filed an appeal and a cross-appeal.  This court dismissed the appeal and cross-appeal for a second time because the trial court had awarded RAW its attorney's fees without determining the amount of fees.  The trial court then ordered Virginia Woods to pay RAW its attorney's fees in the amount of $134,354.90. This third appeal and cross-appeal ensued.

### Virginia Woods' Appeal

1.    <u>Supplemental Counterclaim for Slander of Title</u>

{¶7}    In its first assignment of error, Virginia Woods argues that the trial court erred in dismissing its supplemental counterclaim for slander of title.

{¶8}    Virginia Woods filed a counterclaim for slander of title with its original answer and counterclaim on the basis that RAW had wrongfully filed a mechanic's lien against Virginia Woods' property.   The trial court dismissed Virginia Woods' counterclaim prior to trial.  The trial court later permitted Virginia Woods to file a supplemental counterclaim after it posted a cash deposit with the clerk of courts and moved the court for an order releasing the mechanic's lien, so that Virginia Woods could sell its property with clear title.  Virginia Woods alleged in its supplemental

5

counterclaim that RAW's wrongful lien imposed an impediment to selling its property and it suffered damages in the form of attorney's fees.

{¶9} During trial, RAW moved to dismiss Virginia Woods' supplemental counterclaim for slander of title on the basis that it had been filed outside the one-year statute of limitations. RAW's mechanic's lien was recorded on September 22, 2016, and although the original complaint was filed on July 26, 2017, the supplemental counterclaim was not deemed filed until August 24, 2018. The trial court dismissed Virginia Woods' slander-of-title counterclaim as falling outside the statute of limitations.

{¶10} The dismissal of a claim on statute-of-limitations grounds presents a question of law that we review de novo. *Potter v. Cottrill*, 4th Dist. Vinton No. 11CA685, 2012-Ohio-2417, ¶ 9. Both parties agree that the statute of limitations for a slander-of-title action is one year. *See* R.C. 2305.11(A); *Metzler v. Fifth Third Bank*, 10th Dist. Franklin No. 16AP-638, 2017-Ohio-7088, ¶ 13. A cause of action for slander of title accrues when the allegedly wrongful document is filed with the recorder's office, even if the full extent of the damages is not yet known. *Smith Elec. v. Rehs*, 9th Dist. Summit No. 18433, 1998 Ohio App. LEXIS 537, 6 (Feb. 18, 1998).

{¶11} Virginia Woods' original counterclaim for slander of title was timely filed within one year of the recorded mechanic's lien, but the parties dispute whether Virginia Woods' supplemental counterclaim, which was filed outside of the one-year lien date, relates back to the date of its original counterclaim.

{¶12} Civ.R. 15 governs both amended and supplemental pleadings. Civ.R. 15(C) addresses whether amended pleadings can relate back to the original pleading, and it provides that "[w]henever the claim or defense asserted in the amended

pleading arose out of the conduct, transaction, or occurrence set forth or attempted to be set forth in the original pleading, the amendment relates back to the date of the original pleading."

{¶13} Civ.R. 15(E) addresses supplemental pleadings and permits a party, upon motion and court approval, "to serve a supplemental pleading setting forth transactions or occurrences or events which have happened since the date of the pleading sought to be supplemented. Permission may be granted even though the original pleading is defective in its statement of a claim for relief or defense."

{¶14} Civ.R. 15 does not explicitly answer the question of whether the relation-back provision that applies to amendments of pleadings under Civ.R. 15(C) also applies to supplemental pleadings. However, the staff notes to Civ.R. 15(E) support the notion that a supplemental claim relates back to the original claim. The staff notes to Civ.R. 15(E) explain that a supplemental pleading is a continuation of the original pleading and permits a party to allege facts that have occurred since the original pleading. "The purpose of [Civ.R. 15(E)] is to avoid the necessity of filing a new complaint even though events occurring subsequent to the filing of the original complaint and relating to the operative facts of the original complaint have made clear the right to relief." *See* Staff Note to Civ.R. 15(E).

{¶15} Moreover, federal cases interpreting the federal counterpart to Civ.R. 15(E), Fed.R.Civ.P. 15(d), have held that a supplemental pleading should generally relate back to the original pleading. *See Bromley v. Michigan Educ. Assn.-NEA*, 178 F.R.D. 148, 156 (E.D.Mich.1998), relying on *Davis v. Piper Aircraft Corp.*, 615 F.2d 606, 609 (4th Cir.1980), fn. 3; *T Mobile Northeast LLC v. City of Wilmington*, 913 F.3d 311, 327 (3d Cir.2019) ("[E]ven though Rule 15(d) is in a separate statutory

7

provision from Rule 15(c), a supplemental complaint can relate back."). Therefore, we hold that that supplemental pleadings under Civ.R. 15(E) relate back to the date of original pleadings.

{¶16} Given that supplemental pleadings filed under Civ.R. 15(E) relate back to the original pleading as would an amendment to a pleading filed under Civ.R. 15(C), Virginia Woods' supplemental counterclaim filed in August 2018 relates back to its original counterclaim filed in August 2017.

{¶17} RAW makes the argument that Virginia Woods' supplemental slander-of-title counterclaim should not relate back to its original counterclaim because the trial court dismissed the original counterclaim prior to the filing of the supplemental counterclaim. We disagree. Civ.R. 15(E) specifically provides that a court may grant a supplemental pleading "even though the original pleading is defective in its statement of a claim for relief or defense." Furthermore, although the trial court dismissed Virginia Woods' original counterclaim, it also permitted, over RAW's objection, the filing of a supplemental counterclaim. The trial court's decision to dismiss the original counterclaim for slander of title could be revisited, because that decision was an interlocutory order and thereby subject to revision prior to final judgment. *See Littleton v. Holmes Siding Contr., Ltd.*, 10th Dist. Franklin No. 13AP-138, 2013-Ohio-5602, ¶ 6 (interlocutory orders not immediately appealable are subject to revision any time prior to final judgment).

{¶18} Therefore, because Virginia Woods' supplemental slander-of-title counterclaim related back to the date of its original counterclaim, the trial court erred in dismissing Virginia Woods' supplemental counterclaim on statute-of-limitations grounds. We sustain Virginia Woods' first assignment of error.

8

2.  Material Breach of Contract

**{¶19}** In its second assignment of error, Virginia Woods argues that the trial court erred in determining that it had materially breached the PMC.

**{¶20}** Whether a party has materially breached a contract is generally a question of fact, and an appellate court applies a manifest-weight-of-the-evidence standard of review to a trial court's determination after a bench trial. *Investor Support Servs., LLC v. Dawoud*, 12th Dist. Warren No. CA2020-09-060, 2021-Ohio-2293, ¶ 22. "[A] 'material breach' of contract is a party's failure to perform an element of the contract that is 'so fundamental to the contract' that the single failure to perform 'defeats the essential purpose of the contract or makes it impossible for the other party to perform.' " *O'Brien v. Ohio State Univ.*, 10th Dist. Franklin No. 06AP-946, 2007-Ohio-4833, ¶ 56, quoting 23 Williston on Contracts, Section 63:3 (4th Ed.1990).

**{¶21}** The trial court determined that Virginia Woods materially breached the PMC when Virginia Woods' managing member, Jason Purden, emailed RAW and terminated RAW's management duties under the PMC without the required 60 days' notice.

**{¶22}** Virginia Woods argues that RAW repeatedly breached the PMC first by depositing tenants' security deposits into RAW's escrow account instead of the designated bank accounts owned by Virginia Woods. RAW does not dispute that the PMC required RAW to deposit all security deposits into Virginia Woods' accounts, nor does RAW dispute that it violated the PMC's terms, instead RAW argues that Virginia Woods waived this requirement by allowing RAW to deposit checks into its own account for a period of years without objection. The trial court found, and the record supports, that RAW deposited some tenants' checks into its own escrow account

9

almost from the outset of the parties' dealings, and that Virginia Woods continued its relationship with RAW despite RAW's actions. Therefore, the trial court's determination that RAW did not materially breach the PMC by depositing tenants' checks into RAW's escrow account is not against the manifest weight of the evidence.

{¶23} Virginia Woods also argues that RAW anticipatorily repudiated the PMC when RAW notified Virginia Woods that RAW would no longer perform emergency repairs to the properties. "Where one party to a contract refuses to perform under the terms of the contract, an anticipatory repudiation is said to occur." *Southeast Land Dev., Ltd. v. Primrose Mgmt., L.L.C.*, 193 Ohio App.3d 465, 2011-Ohio-2341, 952 N.E.2d 563, ¶ 7 (3d Dist.). "If an anticipatory breach of contract is found to occur, the injured party has the option of either terminating the contract and suing the breaching party immediately or continuing the contract and suing the breaching party for damages after the time for performance has passed." *Id.*, citing 18 Ohio Jurisprudence 3d, Contracts, Section 238 (2011).

{¶24} In rejecting Virginia Woods' anticipatory-repudiation argument, the trial court found that RAW and Virginia Woods communicated repeatedly regarding the failure of Virginia Woods to pay obligations in a timely manner. In July 2016, Virginia Woods requested that RAW perform maintenance work to several apartment units that had failed inspection by city housing authorities, and although this work was outside the scope of the PMC, RAW performed the work. Virginia Woods failed to pay the entire amount owed to RAW, and RAW eventually sent an email to Purden that outlined the delinquent financial issues, and also a proposed way to continue the business relationship. Purden did not respond. RAW then sent an email to Purden explaining that it could no longer perform repair work, which would require RAW to

extend further credit to Virginia Woods. RAW still performed its required management duties under the PMC and continued to keep Purden advised of any issues. Purden then terminated the PMC without giving RAW 60 days' notice. Therefore, because RAW attempted to reach an agreement with Purden regarding their financial disagreements and continued to provide management oversight, the trial court did not err in determining that RAW's refusal to perform further repair work did not amount to an anticipatory repudiation of the PMC.

{¶25} Based on the testimony presented at trial, the trial court's determination that Virginia Woods materially breached the PMC by terminating it without 60 days' notice is not against the manifest weight of the evidence.

{¶26} We overrule Virginia Woods' second assignment of error.

### 3. Unlicensed Real Estate Broker

{¶27} In its third assignment of error, Virginia Woods argues that the trial court erred in awarding damages to RAW because RAW performed property-management duties under the PMC as an unlicensed real estate broker.

{¶28} Only a licensed real estate broker can obtain legal recovery for broker activities under R.C. 4735.21, which provides: "No right of action shall accrue to any person, partnership, association, or corporation for the collection of compensation for the performance of the acts mentioned in section 4735.01 of the Revised Code, without alleging and proving that such person, partnership, association, or corporation was licensed as a real estate broker or foreign real estate dealer."

{¶29} RAW does not dispute the fact that it failed to prove at trial that it was a licensed real estate broker, but instead RAW makes a statutory-construction argument that it is exempt from R.C. 4735.21 because it is a limited liability company,

11

which is not expressly mentioned in R.C. 4735.21. The trial court agreed with RAW's argument and determined that RAW, as a limited liability company, was not bound by R.C. 4735.21.

**{¶30}** Whether RAW, as a limited liability company, is bound by R.C. 4735.21 is a legal question that we review de novo. *See Wray v. Gahm Properties*, 2018-Ohio-50, 103 N.E.3d 148, ¶ 8 (4th Dist.) (issues of statutory construction are reviewed de novo).

**{¶31}** Courts have strictly interpreted R.C. 4735.21 to hold that only a licensed real estate broker can maintain an action for broker activities. *Jones v. Sittineasy L.L.C.*, 8th Dist. Cuyahoga No. 103294, 2016-Ohio-712, ¶ 8.

**{¶32}** R.C. 4735.01(A) defines a "real estate broker" as follows:

[A]ny person, partnership, association, limited liability company, limited liability partnership, or corporation * * * who for another, whether pursuant to a power of attorney or otherwise, and who for a fee, commission, or other valuable consideration, or with the intention, or in the expectation, or upon the promise of receiving or collecting a fee, commission, or other valuable consideration does any of the following:

(1) Sells, exchanges, purchases, rents, or leases, or negotiates the sale, exchange, purchase, rental, or leasing of any real estate;

(2) Offers, attempts, or agrees to negotiate the sale, exchange, purchase, rental, or leasing of any real estate;

(3) Lists, or offers, attempts, or agrees to list, or auctions, or offers, attempts, or agrees to auction, any real estate;

* * *

(5) Operates, manages, or rents, or offers or attempts to operate, manage, or rent, other than as custodian, caretaker, or janitor, any building or portions of buildings to the public as tenants;

(6) Advertises or holds self out as engaged in the business of selling, exchanging, purchasing, renting, or leasing real estate;

(7) Directs or assists in the procuring of prospects or the negotiation of any transaction, other than mortgage financing, which does or is calculated to result in the sale, exchange, leasing, or renting of any real estate[.]

**{¶33}** R.C. 4735.21 does not expressly list a limited liability company among the entities prohibited from seeking recovery for broker activities without first proving it has a valid real estate license; however, R.C. 4735.21 does apply to any "person." R.C. Chapter 4735 does not specifically define "person" for purposes of the chapter. R.C. Chapter 1701, governing general corporate law, defines "person" to include a "limited liability company." R.C. 1701.01(G). At least one other court has looked to the statutes governing corporate law when defining "person" used in another statutory context. *See City of Cleveland v. Go Invest Wisely, L.L.C.*, 8th Dist. Cuyahoga Nos. 95189, 95190, 95191, 95192, 95193, 95194, 95195, 95196, 95197, 95198, 95199, 95200, 95201, 95202, 95203, 95204, 95205 and 95206, 2011-Ohio-3410, ¶ 17-18 (appellate court rejected the argument of a limited liability company that it could not be found guilty under a city ordinance that prohibits a "person, agent, firm or corporation" from selling real property without furnishing a certificate of disclosure because the court relied on former R.C. 1705.01(K) defining a "person" to include a limited liability company).

13

**{¶34}** Therefore, we hold that a limited liability company is a "person" for purposes of R.C. 4735.21 and cannot seek recovery for broker activities without first proving that it has a valid real estate license under R.C. Chapter 4735.

**{¶35}** Our holding that a limited liability company is bound by R.C. 4735.21 and cannot recover for broker activities without first proving that it holds a valid real estate license is consistent with the plain language of R.C. 4735.21, and to hold otherwise and exclude a limited liability company from the dictates of R.C. 4735.21 would lead to an absurd result. "[W]hen the General Assembly enacts a statute, it does not intend to produce an absurd result." *State ex rel. Clay v. Cuyahoga Cty. Med. Examiner's Office*, 152 Ohio St.3d 163, 2017-Ohio-8714, 94 N.E.3d 498, ¶ 22, citing R.C. 1.47(C). R.C. Chapter 4735 governing real estate brokers clearly applies to limited liability companies. *See* R.C. 4735.01(A) (defining a "real estate broker" to include a "limited liability company"); R.C. 4735.02(A) (including a limited liability company among the entities required to obtain a real estate broker license). Given that R.C. Chapter 4735 generally applies to limited liability companies, to hold that a limited liability company can evade real estate licensing requirements and still pursue legal recovery for broker activities in contravention of R.C. 4735.21 cannot be a result intended by the legislature.

**{¶36}** At trial, RAW did not provide any proof that it acted as a licensed real estate broker, and therefore, it cannot recover damages for broker activities under R.C. 4735.21. Because the trial court determined that R.C. 4735.21 did not apply to RAW, we cannot discern what portion of RAW's damages for breach of the PMC related to broker activities under R.C. 4735.01. Therefore, we sustain Virginia Woods' third

assignment of error to the extent that any damages awarded to RAW relate to broker activities under R.C. 4735.01.

### 4. Breach of Fiduciary Duty

**{¶37}** In its fourth and fifth assignments of error, Virginia Woods argues that the trial court erred in determining that RAW owed no fiduciary duty to Virginia Woods and in dismissing its breach-of-fiduciary-duty counterclaim against RAW.

**{¶38}** Virginia Woods contends that RAW is a fiduciary under R.C. 4735.62, because it acted as a licensed real estate broker. As stated under the third assignment of error above, no proof exists that RAW acted as a licensed real estate broker. Therefore, R.C. 4735.62 does not apply.

**{¶39}** Virginia Woods argues that even if RAW is not bound by a statutory fiduciary duty, RAW owed a fiduciary duty to Virginia Woods based on RAW's role as a property manager. Under the PMC, RAW agreed "to promote the interest of the Owner [Virginia Woods] with the most good faith, loyalty, and fidelity[.]" Virginia Woods contends that RAW breached its fiduciary duties by (1) misappropriating funds owed to Virginia Woods, (2) charging Virginia Woods for finding the caretaker for the property as a tenant and also for the caretaker's labor, and (3) hiring the caretaker, despite knowing his status as a registered sex offender.

**{¶40}** In order to succeed on a breach-of-fiduciary-duty claim, a claimant must show: "(1) the existence of a duty arising from a fiduciary relationship, (2) the failure to observe the duty, and (3) an injury proximately resulting." *Vontz v. Miller*, 2016-Ohio-8477, 111 N.E.3d 452, ¶ 28 (1st Dist.).

**{¶41}** In determining whether a fiduciary relationship exists, "the main question is whether a party agreed to act primarily for the benefit of another in matters

connected with its undertaking." *Hope Academy Broadway Campus v. White Hat Mgt., L.L.C.*, 145 Ohio St.3d 29, 2015-Ohio-3716, 46 N.E.3d 665, ¶ 43. The Supreme Court defines a fiduciary relationship "as one 'in which special confidence and trust is reposed in the integrity and fidelity of another and there is a resulting position of superiority or influence, acquired by virtue of this special trust.' " *Id.*, quoting *In re Termination of Emp. of Pratt*, 40 Ohio St.2d 107, 115, 321 N.E.2d 603 (1974).

{¶42} Assuming for the sake of this appeal that RAW, the property manager, owed fiduciary duties to Virginia Woods, the property owner, Virginia Woods has failed to show that the trial court's decision dismissing the breach-of-fiduciary-duty counterclaim after trial was against the manifest weight of the evidence. With regard to RAW's placement of a registered sex offender as the caretaker at the property, Virginia Woods argues that RAW placed tenants in danger, but this argument is merely conjecture. Virginia Woods failed to produce any evidence at trial to show that the caretaker's placement caused any injury. Virginia Woods also argues that RAW engaged in self-dealing by charging Virginia Woods a commission for finding the caretaker as a tenant, and also by charging Virginia Woods for the caretaker's labor. As the trial court determined, Virginia Woods would have been responsible under the PMC to find tenants and to hire maintenance workers for the properties, and it just so happened that RAW found one person to fill both roles. Therefore, Virginia Woods has failed to show that the caretaker's pay arrangement caused injury.

{¶43} Finally, Virginia Woods argues that RAW's mishandled security deposits constituted a breach of fiduciary duty. The trial court awarded Virginia Woods $10,120 on its breach-of-contract claim for the mishandled security deposits, and Virginia Woods has not alleged damages separate from its breach-of-contract

claim. Therefore, Virginia Woods is not entitled to double recovery, and it has not shown that RAW acted with actual malice such that punitive damages would be appropriate. *See Blair v. McDonagh*, 177 Ohio App.3d 262, 2008-Ohio-3698, 894 N.E.2d 377, ¶ 65 (1st Dist.) ("An award of punitive damages may be appropriate on a claim for breach of fiduciary duty upon a showing of malice."). We conclude that the trial court did not err in dismissing Virginia Woods' breach-of-fiduciary-duty counterclaim against RAW after trial.

{¶44} We overrule Virginia Woods' fourth and fifth assignments of error.

### 5. Prevailing Party Attorney's Fees

{¶45} In its sixth assignment of error, Virginia Woods argues that the trial court erred in awarding RAW its attorney's fees.

{¶46} Generally, a party cannot recover its attorney's fees in an action, but an exception exists where the contract between the parties provides for fee shifting. *United States Fire Ins. v. Am. Bonding Co.*, 1st Dist. Hamilton Nos. C-160307 and C-160317, 2016-Ohio-7968, ¶ 47. Here, the PMC allowed RAW to seek an award of attorney's fees if RAW is the "prevailing party" in an action brought by RAW. A prevailing party is generally one in whose favor the decision or verdict is rendered and judgment entered. *Keal v. Day*, 164 Ohio App.3d 21, 2005-Ohio-5551, 840 N.E.2d 1139, ¶ 8 (1st Dist.).

{¶47} Because this court has determined that the trial court erred in dismissing Virginia Woods' slander-of-title counterclaim and erred in failing to apply R.C. 4735.21 to RAW, the trial court must reconsider on remand whether RAW remains a "prevailing party" under the PMC and Ohio law.

{¶48} Therefore, we decline to address Virginia Woods' sixth assignment of error.

### RAW's Cross-Appeal

1.    Mishandled Security Deposits

{¶49} In its first cross-assignment of error, RAW argues that the trial court erred in determining that RAW breached the PMC by depositing tenants' security deposits into RAW's escrow accounts instead of Virginia Woods' bank account. Relatedly, in RAW's second cross-assignment of error, RAW argues that the trial court erred in determining that Virginia Woods was entitled to $10,120 for the mishandled security deposits.

{¶50} Contract modification can occur where the parties mutually intend to modify the contract through their course of dealing. *Third Fed. S. & L. Assn. of Cleveland v. Formanik*, 8th Dist. Cuyahoga Nos. 100562 and 100810, 2014-Ohio-3234, ¶ 13. Along with mutual assent, a modification of a contract must also be supported by consideration. *RotoSolutions, Inc. v. Crane Plastics Siding, LLC*, 10th Dist. Franklin Nos. 13AP-1 and 13AP-52, 2013-Ohio-4343, ¶ 16. By contrast, waiver of a contract term occurs when a party voluntary relinquishes its right to enforce a contract term. *EAC Properties, LLC v. Brightwell*, 10th Dist. Franklin No. 10AP-853, 2011-Ohio-2373, ¶ 21.

{¶51} Section 2 of the PMC provides that "[a]ll amounts collected shall be deposited into the Owner's designated bank accounts for each building." RAW argues that the parties either modified or waived the requirement that any collected amount be deposited in accounts held by Virginia Woods.

18

**{¶52}** RAW admits that some tenants' security deposits were placed into its own escrow account, and that RAW used a portion of those funds to pay Virginia Woods' debts. Although RAW admits to these actions, RAW argues that Purden acquiesced in RAW's actions because he received monthly financial statements that included these transactions, and he requested and received a separate accounting of RAW's escrow account. RAW also argues that its actions were authorized by Section 5 of the PMC, which stated "[a]ny deficiency in funds owed by Owner shall be considered a loan subject to repayment with interest, and Owner hereby agrees to reimburse agent, including interest and hereby authorizes agent to deduct such amounts from any future collected monies due Owner." Finally, RAW argues that the evidence it presented at trial showed that $4,281 from the escrow account was used to reimburse a tenant's security deposit and to offset amounts Virginia Woods owed to RAW.

**{¶53}** The trial court rejected RAW's modification and waiver arguments with regard to Section 2 of the PMC. The trial court reasoned that the parties had crossed out and initialed a provision in Section 2 of the PMC that stated: "Funds in the escrow account remain the property of the owner and are subject to disbursement of expenses by agent as described in this agreement." Furthermore, Jonathan Roth, RAW's managing member, admitted at trial that the PMC did not authorize RAW to hold funds in its own escrow account. Roth also admitted that Purden was "surprised" to learn that RAW had been withholding some of the deposits.

**{¶54}** Therefore, the trial court's determination that RAW breached the PMC by mishandling security deposits owed to Virginia Woods in the amount of $10,120 was not against the manifest weight of the evidence presented at trial.

19

**{¶55}** We overrule RAW's first and second cross-assignments of error.

2.     Pest-Control Materials

**{¶56}** In its third cross-assignment of error, RAW argues that the trial court erred in finding that Virginia Woods was entitled to a "set off" for undelivered pest-control materials.

**{¶57}** At trial, Roth testified that when he ordered materials for the Virginia Woods properties, he would typically have them delivered to his personal residence. Roth recalled ordering the pest-control materials and having them delivered to his home. Roth testified that he took the materials to the Virginia Woods properties, but the materials were ordered and delivered around the time that Purden officially terminated the PMC. Roth admitted that the unused pest-control materials "presumably" ended up at RAW's office after Purden terminated the parties' relationship. Purden testified that he did not receive the materials.

**{¶58}** The trial court's determination that RAW owed Virginia Woods $685 for pest-control materials is not against the manifest weight of the evidence.

**{¶59}** We overrule RAW's third cross-assignment of error.

3.     Prejudgment Interest

**{¶60}** In its fourth cross-assignment of error, RAW argues that the trial court erred in failing to award prejudgment interest.

**{¶61}** RAW contends that the trial court erred in failing to award prejudgment interest as provided for in the PMC and in R.C. 1343.03(A). RAW did not file a motion for prejudgment interest at the conclusion of the trial, although it did mention in its objections to the magistrate's decision that the magistrate had failed to order

prejudgment interest. Moreover, on remand, the trial court can determine whether RAW may be entitled to prejudgment interest.

{¶62} We overrule RAW's fourth cross-assignment of error.

## Conclusion

{¶63} In conclusion, we affirm the trial court's dismissal of Virginia Woods' breach-of-fiduciary counterclaim, and we also affirm that portion of the trial court's judgment awarding Virginia Woods damages with regard to its counterclaims for mishandled security deposits and undelivered pest-control materials. We reverse the trial court's judgment with respect to the dismissal of Virginia Woods' slander-of-title counterclaim on statute-of-limitations grounds, and we remand that portion of the judgment for further proceedings. We also reverse that portion of the trial court's judgment awarding RAW money damages for Virginia Woods' breach of the PMC, to the extent that these damages result from RAW's actions in undertaking real estate broker activities under R.C. 4735.01, and we remand the matter to the trial court to determine what portion of these damages are recoverable under R.C. 4735.21.

Judgment affirmed in part, reversed in part, and cause remanded.

BOCK, P.J., concurs.
BERGERON, J., concurs in part and dissents in part.

BERGERON, J., concurring in part and dissenting in part.

{¶64} I respectfully dissent from the majority's conclusion reading "limited liability corporation" into a statute where it is glaringly, albeit perplexingly, absent. Because R.C. 4735.21, by its plain text, excludes limited liability companies ("LLCs") from the requirement that only real estate broker licensees can recover damages for real estate broker-related activities, I would hold that RAW was entitled to recover

21

damages for those activities regardless of its licensee status. I otherwise concur in the majority opinion on all other matters.

{¶65} Throughout R.C. Chapter 4735, the General Assembly repeatedly includes the term "limited liability company" when listing the types of entities bound by the code's terms. For instance, R.C. 4735.01 defines "Real estate broker" as "any person, partnership, association, limited liability company, limited liability partnership, or corporation, foreign or domestic" who engages in real estate broker-related activities. R.C. 4735.02 features the same list in requiring such entities to be licensed as real estate brokers. R.C. 4735.03 again uses the same terms in listing the entities subject to regulation by the Ohio Real Estate Commission.

{¶66} I could go on, but skipping ahead to R.C. 4735.21, governing rights of action for real estate broker-related activities, LLCs simply drop off the list. The list of entities that need a real estate broker license to recover for real estate broker-related activities reads: "No right of action shall accrue to any *person, partnership, association, or corporation* * * *." (Emphasis added.) R.C. 4735.21. Reading this statute as the General Assembly wrote it, in the context of the full chapter and the Revised Code as a whole, LLCs are exempted from needing a license to bring an action for real estate broker-related activities.

{¶67} To get around this omission, the majority opinion borrows the definition of "person" from R.C. 1701.01(G), which includes LLCs. But R.C. 1701.01 defines "person" only for that chapter—"[a]s used in section 1701.01 to 1701.98 of the Revised Code"—which clearly does not encompass R.C. Chapter 4735. R.C. 1701.01. To be clear, I do not suggest that a court's interpretation of one chapter of the law cannot borrow (by analogy or otherwise) from another, but in this case, the context of

22

the relevant chapter and section make it clear that "person," as used in R.C. 4735.21 and throughout R.C. Chapter 4735, is not used in the way R.C. 1701.01 defines it.

{¶68} For example, R.C. 1701.01's definition of "person" also includes "corporation[s]" and "partnership[s]." So, if the General Assembly intended to borrow R.C. 1701.01's definition of "person" as it is used in R.C. Chapter 4735, why would it repeatedly add "corporation," "partnership," and, usually, "limited liability company" in addition to "person" throughout R.C. Chapter 4735? Construing the statute this way cuts against the surplusage canon of statutory interpretation: courts generally presume that the legislature does not include meaningless words in a statute, and thus, courts should avoid interpretations "that would render any provision superfluous." *State v. Reed*, 162 Ohio St.3d 554, 2020-Ohio-4255, 166 N.E.3d 1106, ¶ 15, citing *Rhodes v. City of New Philadelphia*, 129 Ohio St.3d 304, 2011-Ohio-3279, 951 N.E.2d 782, ¶ 23. Reading "LLC" into "person" when such logic would dictate that "person" also includes "corporation" and "partnership" renders R.C. 4735.21's listing of those latter terms duplicative and meaningless.

{¶69} This reading of the statute also runs against the negative implication canon, also known as the *expressio unius est exclusio alterius* canon: "the expression of one or more items of a class implies that those not identified are to be excluded." *State v. Droste*, 83 Ohio St.3d 36, 39, 697 N.E.2d 620 (1998). By including "person," "corporation," "partnership," and other entities in the list of regulated entities, but excluding LLCs, the clear implication is that LLCs are not subject to that regulation. LLCs are otherwise regularly part of the "class" of regulated entities throughout the chapter, and, guided by the negative implication canon, their exclusion should mean something here.

**{¶70}** I fully acknowledge that the General Assembly's exclusion of LLCs from the list of regulated entities in R.C. 4735.21 is puzzling, but I would not go so far as to say that reading the plain text of this statute, in context, reaches an absurd result, as the majority concludes. The disparity might be explained by the fact that this part of R.C. 4735.21 predates the advent of LLCs in Ohio in 1994. But the General Assembly has amended R.C. Chapter 4735, including R.C. 4735.21, several times since then. Indeed, it added LLCs to many provisions of R.C. Chapter 4735, but not to R.C. 4735.21. Whether this was oversight or purposeful, it's not for us to speculate when the plain language is clear.

**{¶71}** We should trust that the General Assembly, in its capacity as a lawmaking entity, means what it says, and here it plainly says that LLCs do not need a real estate broker license to recover damages for real estate broker-related activities under R.C. 4735.21. *See Jones v. Action Coupling & Equip., Inc.*, 98 Ohio St.3d 330, 2003-Ohio-1099, 784 N.E.2d 1172, ¶ 12 ("When the statutory language is plain and unambiguous, and conveys a clear and definite meaning, we must rely on what the General Assembly has said."). If it did not mean to say that, it should fix the statutory language, not us. Accordingly, I respectfully dissent in part.

Please note:

The court has recorded its entry on the date of the release of this opinion.