[Cite as *Finn v. Seiser*, 2024-Ohio-5288.]

# IN THE COURT OF APPEALS
# FIRST APPELLATE DISTRICT OF OHIO
# HAMILTON COUNTY, OHIO

| | | |
|---|---|---|
| PHIL FINN, | : | APPEAL NO. C-240047 |
| | | TRIAL NO. A-2104036 |
| and | : | |
| MARILYN FINN, | : | *O P I N I O N.* |
| Plaintiffs-Appellants, | : | |
| vs. | : | |
| JENNIFER SEISER, | : | |
| and | : | |
| WILLIAM MCCLELLAN, | : | |
| Defendants-Appellees. | : | |

Civil Appeal From:   Hamilton County Court of Common Pleas

Judgment Appealed From Is:  Affirmed

Date of Judgment Entry on Appeal: November 6, 2024

*Robbins, Kelly, Patterson & Tucker, LPA*, *Adam J. Turer* and *Elizabeth M. Johnson*, for Plaintiffs-Appellants,

*Cornetet, Meyer, Rush & Spillane* and *Michael S. Spillane*, for Defendants-Appellees.

**KINSLEY, Judge.**

{¶1}     Plaintiffs-appellants Phil and Marilyn Finn ("the sellers") appeal the judgment of the Hamilton County Court of Common Pleas finding, after a bench trial, that they failed to prove claims for breach of contract and breach of the implied duty of good faith and fair dealing against defendants-appellees Jennifer Seiser and William McClellan ("the buyers"). The sellers raise two assignments of error. First, they argue the trial court erred when it denied their motion for summary judgment, instead allowing the case to proceed to trial. Second, the sellers argue the trial court's verdict at trial was against the manifest weight of the evidence. After considering the sellers' arguments and reviewing the record, we affirm the trial court's judgment.

### *Factual and Procedural Background*

{¶2}     This appeal arises from a contract between the sellers and the buyers for the purchase of the sellers' home ("the property"). When the buyers failed to close on the property, the sellers filed a complaint against both the buyers and a home inspection company, BJAR, that the buyers hired to assess the condition of the home. The sellers' complaint raised four claims: (1) breach of contract by the buyers, (2) breach of the implied duty of good faith and fair dealing by the buyers, (3) negligence by the buyers, and (4) negligence by BJAR.

{¶3}     After the parties conducted extensive discovery in the case, the sellers moved for summary judgment. While the motion was initially filed against both the buyers and BJAR, the sellers subsequently withdrew their summary judgment motion insofar as it sought relief against BJAR and later dismissed BJAR from the case entirely. The sellers also voluntarily dismissed their negligence claim against

the buyers, leaving only their claims for breach of contract and breach of the duty of good faith and fair dealing.

**{¶4}** The trial court denied the sellers' summary judgment motion as to both of these claims. In doing so, it held that there were genuine issues of material fact for the trier of fact to resolve, and it scheduled the case for trial on the sellers' two remaining claims against the buyers.

**{¶5}** At trial, the sellers testified on their own behalf and also called their realtor Pam Steiner, Gary Wilson, a restoration specialist who completed work at the property, the buyers' real estate agent Annemarie DeCurtins, and Timothy Miller, a plumber who replaced a defective shower hose at the home. The buyers similarly testified on their own behalf and also called their inspector Richard McKenzie, who worked for BJAR.

**{¶6}** All of the witnesses' testimony focused on the sellers' property, where they had lived for roughly 40 years before moving to Charleston, South Carolina. After their relocation, the sellers placed the property on the market.

**{¶7}** On February 8, 2021, the sellers and the buyers entered into a contract for the sale of the property. Under the contract, the buyers agreed to purchase the home for a purchase price of $1.2 million. There were a number of contingencies in the contract. For example, the buyers' purchase obligation was made expressly contingent on the buyers' ability to obtain a conventional fixed-rate loan. In addition, the purchase was contingent upon an inspection of the property by the buyers, the buyers' ability to obtain property and flood insurance, and an appraisal of the property for at least the purchase price. The contract also provided that, in the event of a fire or other casualty to the property, the buyers had the option to either proceed with the closing or terminate the contract.

{¶8} The parties scheduled the closing for March 25, 2021. But the closing did not occur as planned. This was because, two days after the inspection conducted by McKenzie at the buyers' request, McKenzie discovered massive flooding at the property coming from the primary bathroom's shower wand. He observed the damage—which included water intrusion and a partially collapsed ceiling—when he went back to the property to collect his radon testing equipment. This much was not in dispute. But the cause of the water damage was highly contested at trial.

{¶9} According to Phil Finn's[1] testimony, he learned about the water damage and its source during a distressing call from McKenzie. Phil testified the shower wand in the primary bathroom had not previously malfunctioned. Phil relayed that McKenzie apologized for the harm he caused to the property during the phone call. The sellers accordingly believed McKenzie caused the flooding by not properly turning off the shower wand in the primary bathroom shower during the inspection.

{¶10} In his testimony, however, McKenzie denied causing the shower wand to malfunction and denied apologizing to the sellers on the phone. While McKenzie admitted to testing the wand during the inspection, he noted that it was inoperative. He also described presenting the buyers with the inspection report, discussing its findings, and completing two additional walkthroughs of the property before leaving on the day of the inspection. According to his testimony, he did not hear water running during any of these activities.

{¶11} The buyers supported McKenzie's version of events with their testimony, adding that they too did not hear or see any running water during the

---

[1] Because both Phil and Marilyn Finn share a last name, we refer to Phil individually by his first name to avoid confusion.

inspection. The buyers recalled learning from McKenzie that the shower wand in the primary bathroom was inoperable at that time. Steiner, on the other hand, testified that she had accessed electronic security records for the property, and that no one entered the property between the inspection and the day McKenzie returned for his radon testing equipment. Miller added that the only way for water to escape through the shower hose would have been if the control node was moved to the "on" position.

{¶12} After McKenzie discovered the flooding, the parties negotiated several revisions to their contract based on the water damage to the property. They agreed to extend the closing date from March 25 to May 25 and then again to June 25, 2021, to allow time for the water damage to be repaired. The parties also agreed to a $15,000 closing credit for the buyers in lieu of certain fixtures for the property, as well as that the sellers would either provide a written guarantee that the repair work would be completed by a single contractor or allow the buyers to conduct an inspection prior to the final walkthrough before closing. The sellers testified that the buyers were personally involved in the repair process, even selecting custom carpeting to replace the flooring that was damaged during the flooding.

{¶13} Four days before the June 25 closing was set to occur, on June 21, 2021, the buyers conducted a walkthrough of the property. The sellers testified that, the following day, the buyers sent an email indicating that they would not close on the property unless the purchase price were reduced by $100,000. According to the sellers, the buyers included a list of reasons to justify their requested price decrease. These included the allegations that parts of the property remained damaged by water, that the parts of the property that had been repainted were in shoddy condition and would need to be repainted, that the property was not in move-in

ready condition because outlet covers were missing and there was bare wiring exposed in the closet, that the shower wand still needed to be replaced, that the bathroom shutters were the incorrect color, and that the hardwood floors in areas where the carpet had been removed had subsequently been sun-bleached and scratched. Per the sellers, the buyers also expressed that their loan costs had risen during the four-month delay in closing and that homeowner's insurance rates had tripled due to the water damage claim.

{¶14} The sellers testified that they responded by email to the buyers on June 23, 2021. They rejected the buyers' proposed price reduction and took issue with the problems at the property identified by the buyers.

{¶15} Steiner testified that she personally inspected the property prior to closing and that she considered it to be in move-in ready condition. She further indicated that the majority of the issues identified in the buyers' June 22, 2021 email had been rectified and that only cosmetic issues remained. Wilson testified that the remediation work that he supervised at the property had been completed prior to the June 25, 2021 closing date.

{¶16} The buyers and DeCurtins testified that the property was not in move-in ready condition when they observed it on June 21, 2021. They also testified that conducting a further inspection at that time would not have been feasible, as there was work remaining to be completed at the property. The buyers also testified that the sellers never provided them with a guarantee that the repair work was being performed by a sole contractor.

{¶17} The scheduled closing did not take place on June 25, 2021. On June 27, 2021, the buyers executed a notice terminating the purchase contract. They

indicated that the basis for the cancellation was "property insurance availability and / or cost."

{¶18} The sellers testified that they then relisted the property for $1.25 million. The sellers sold the property on September 17, 2021, to a third-party for $1.14 million.

{¶19} Following the submission of testimony, the trial court found for the buyers on both of the sellers' claims. It made several factual findings to support its decision. First, it found that the buyers had inspected the property before closing. It also found that water damage was discovered and that the buyers requested a price reduction to $1 million as a result of the damage.[2] As to the cause of the flooding, the trial court credited McKenzie's denial at trial that he caused the damage. It concluded that the sellers had not proved by a preponderance of the evidence that either the buyers or McKenzie were responsible for the flooding. As a result, the trial court ruled against the sellers on their claims for breach of contract and breach of the implied duty of good faith and fair dealing.

{¶20} The sellers now appeal.

### *Analysis*

{¶21} On appeal, the sellers raise two assignments of error. The first assignment of error focuses on whether the trial court erred in denying summary judgment, and the second assignment of error challenges the trial court's ultimate verdict at the conclusion of trial. We consider these arguments in turn.

---

[2] The trial court's finding as to the amount of the requested price reduction appears to be a typographical error. The testimony at trial was consistent that the buyers requested a $100,000 concession, which would have lowered the original $1.2 million purchase price to $1.1 million not $1 million. In its order, the trial court wrote out the number "$1,000,000." Thus, it is entirely likely that the trial court simply made a clerical error in typing the number, which the testimony indicated should have been $1,100,000.

### *Summary Judgment*

{¶22} The sellers begin by attacking the trial court's denial of their motion for summary judgment. They do so on four grounds: (1) that the buyers breached the contract as a matter of law, (2) that the sellers tendered substantial performance and therefore were not in breach of the contract, (3) that the buyers breached the duty of good faith and fair dealing as a matter of law, and (4) that the buyers' breaches entitle the sellers to monetary damages.

{¶23} This court reviews a trial court's decision to deny a motion for summary judgment under a de novo standard of review. *Bliss v. Manville*, 2022-Ohio-4366, ¶ 12. Under Civ.R. 56(C), "summary judgment shall be granted when the filings in the action, including depositions and affidavits, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." *Bonacorsi v. Wheeling & Lake Erie Ry., Co.*, 2002-Ohio-2220, ¶ 24. A dispute of fact is "material" if it affects the outcome of the litigation. *HSBC Mtge. Servs. v. Williams*, 2014-Ohio-3778, ¶ 25 (12th Dist.). A dispute of fact is "genuine" if it is demonstrated by substantial evidence that goes beyond the allegations in the complaint. *Id.* The moving party bears the burden of establishing the absence of a genuine issue of material fact. *Std. Fed. Bank v. Staff*, 2006-Ohio-3601, ¶ 15 (1st Dist.). In considering a motion for summary judgment, courts must view the evidence in a light most favorable to the nonmoving party. *Wilson v. Lawrence*, 2017-Ohio-1410, ¶ 33 (O'Neill, J., dissenting).

{¶24} Any error in the summary judgment denial is rendered moot or harmless where the trial reveals a genuine issue of material fact supporting judgment in favor of the party against whom summary judgment is sought. *Bliss* at ¶ 14. However, errors in the denial of a summary judgment premised on a pure question

of law are not rendered harmless by a subsequent trial verdict in the nonmoving party's favor. *Id.*

**{¶25}** In an attempt to avoid the factual disputes that permeate this case, the sellers first argue that the buyers breached the contract as a matter of law. A viable breach of contract claim requires that a contract exists, the plaintiff performed, the defendant did not, and the plaintiff has been damaged or sustained a loss. *Qiming He v. Half Price Heating & Air*, 2021-Ohio-1599, ¶ 6 (1st Dist.), citing *White v. Pitman*, 2020-Ohio-3957, ¶ 37 (1st Dist.). Only where the facts are undisputed, and the sole question is whether the contract was breached, does a question of law exist. *Eagle Realty Invests., Inc. v. Dumon*, 2022-Ohio-4106, ¶ 9 (1st Dist.), citing *Stephan Business Ents. v. Lamar Outdoor Advertising Co.*, 2008-Ohio-954, ¶ 16 (1st Dist.).

**{¶26}** With regard to whether the buyers breached the contract, the trial court was not squarely presented at the summary judgment stage with a question of law to resolve. This was because the material facts regarding the sellers' performance—i.e., whether the sellers delivered the property in the condition for which the buyers contracted to buy it—and the buyers' potential excuses from performance under the contract—i.e., whether the buyers were at fault for the water damage—were in genuine dispute. Where the facts as to whether the parties' respective actions satisfied the contract are contested, as they were here, "a question of fact is presented for the trier of fact to decide." *Bank of N.Y. Mellon v. Lewis*, 2014-Ohio-5599, ¶ 81 (6th Dist.). We therefore see no error in the trial court's decision setting the breach of contract claim for trial, rather than granting summary judgment, so that these disputed factual questions could be conclusively resolved.

**{¶27}** So too does the sellers' attempt to characterize their substantial performance claim as a legal question fail to persuade us. In this vein, the sellers

contend that any issues observed by the buyers during the walkthrough, such as sloppily-painted walls or missing outlet covers, were nonmaterial breaches that do not bar a finding that the sellers substantially performed under the contract. It is true, as the sellers point out, that "not all breaches are created equal," and that "a failure to perform a promise that is nominal, trifling, technical, or slight does not excuse performance under the contract by a nonbreaching party." *H&H Glass, Inc. v. Empire Bldg. Co., LLC*, 2016-Ohio-3029, ¶ 7 (1st Dist.). But whether a party materially breached a contract is, at its core, a question of fact. *David Rentals, LLC, v. Virginia Woods, LLC*, 2024-Ohio-1446, ¶ 20 (1st Dist.).

{¶28} Thus, the issue of whether the problems identified by the buyers at the walkthrough amounted to a material breach by the sellers was a question of fact that remained in dispute at the summary judgment stage. This was sufficient to preclude summary judgment.

{¶29} We reach a similar conclusion with regard to the sellers' argument as to the buyers' alleged breach of the implied duty of good faith and fair dealing. Every contract contains such a duty. *Lucarell v. Nationwide Mut. Ins. Co.*, 2018-Ohio-15, ¶ 42. Acting in good faith is the "implied undertaking not to take opportunistic advantage in a way that could not have been contemplated at the time of drafting, and which therefore was not resolved explicitly by the parties." *Brendamour v. City of the Village of Indian Hill*, 2022-Ohio-4724, ¶ 19 (1st Dist.). An inquiry into whether a party breached the implied duty of good faith is a question of fact. *Littlejohn v. Parrish*, 2005-Ohio-4850, ¶ 28 (1st Dist.). However, a party does not violate its implied duty unless it specifically breaches its contractual obligation. *Lucarell* at ¶ 43. As a result, there exists no independent cause of action for

breaching the implied duty of good faith and fair dealing that is separate from a claim for breach of contract. *Id*. at ¶ 44.

{¶30} The sellers' implied duty claim was therefore legally intertwined with its breach of contract claim. And because questions of fact precluded summary judgment on the breach of contract claim, the sellers' motion for summary judgment on their implied duty claim was similarly unpersuasive.

{¶31} But even if the implied duty claim stood on its own, additional disputes of material fact specific to it barred resolution of the ultimate question of law by way of summary judgment. For one, the buyers contended that the unfinished nature of the repairs and the potential for additional water damage justified their request for a price reduction. The sellers, however, contended that the property was move-in ready. The buyers also represented that rising insurance costs due to the water damage claim justified their ultimate decision to back out of the contract. The sellers, on the other hand, characterized the claimed insurance rate hike as a pretext rather than the real reason the buyers terminated the deal. All of this needed to be sorted out at trial before the trial court could determine whether a breach had occurred. Thus, we see no error in the trial court's determination that genuine disputes of material fact precluded summary judgment on the sellers' implied duty claim.

{¶32} Lastly, the sellers contend that they were entitled to damages at the summary judgment stage as a result of the buyers' breaches. But we find no error in the trial court's decision denying the sellers' summary judgment motion as to whether the buyers in fact breached the contract and their implied duty of good faith. In the absence of a summary judgment decision in their favor on the merits of their claims, the sellers were not entitled to a summary judgment as to damages.

**{¶33}** We therefore overrule the sellers' first assignment of error.

### *Manifest Weight*

**{¶34}** The sellers' second assignment of error challenges the trial court's decision at trial. Noting the existence of multiple errors in the trial court's judgment entry, the sellers first argue that the trial court's findings are not supported by evidence or testimony presented at trial. Second, the sellers contend that they established by a preponderance of the evidence that the buyers breached the contract, in essence arguing that the weight of the evidence undermines the trial court's verdict.

**{¶35}** Where the appellant challenges the trial court's factual findings following a trial, appellate courts review the trial court's decision under a manifest weight standard of review. *Qiming He*, 2021-Ohio-1599, at ¶ 6 (1st Dist.), citing *Hyde Park Circle, L.L.C. v. Cincinnati*, 2016-Ohio-3130, ¶ 15 (1st Dist.). The ultimate question in a manifest weight analysis is whether, after weighing all evidence and assessing the credibility of evidence and witnesses, the trial court clearly lost its way. *Id.* at ¶ 7, citing *William Powell Co. v. OneBeacon Ins. Co.*, 2020-Ohio-5325, ¶ 47 (1st Dist.). In assessing whether a trial court's judgment is against the manifest weight of the evidence, we consider whether the judgment was supported by the greater amount of credible evidence and whether the plaintiff met its burden of persuasion by a preponderance of the evidence. *Hyde Park Circle* at ¶ 15 (1st Dist.).

**{¶36}** In reviewing a civil case under the manifest weight standard of review, we presume the correctness of a trial court's findings of fact, given that the trial court had the opportunity to observe the witnesses and assess their credibility. *Qiming He*

at ¶ 7. Moreover, in this posture, "every reasonable intendment and every reasonable presumption must be made in favor of the judgment and the finding of facts." *Eastley v. Volkman*, 2012-Ohio-2179, ¶ 21. Where the evidence is capable of more than one interpretation, a reviewing court applying manifest weight review to a civil judgment must apply the interpretation that is consistent with the verdict and the judgment. *Id.*

{¶37} In challenging the trial court's verdict at trial, the sellers first complain that the trial court's judgment entry contains factual errors. Our starting point, however, is that the trial court's fact-finding was correct, and we are required to resolve any ambiguity in the written entry in favor of the trial court's verdict. *Id.*

{¶38} The sellers take issue with the amount of the price concession the trial court determined the buyers requested after they observed the property on June 21, 2021. Read literally, the trial court's entry indicates that the buyers sought a price reduction to $1 million, when in actuality they requested a reduction in price from $1.2 million to $1.1 million. This appears to a be a mere typographical error on the trial court's part, as the entry indicates that the buyers negotiated for a reduced price of "$1,000,000" rather than "$1,100,000." Consistent with the requirement that we resolve all ambiguity in the trial court's fact-finding in favor of its judgment, we interpret this slight difference in price as a clerical error rather than a factual one. *See Eastley* at ¶ 21.

{¶39} The sellers also complain about the following sentences in the trial court's judgment entry: "Before closing, [the buyers] had a house inspection performed. Water damage was discovered in the primary bathroom." Reading these sentences together, the sellers suggest an erroneous determination by the trial court that the water damage was discovered during the home inspection. But we are

bound to construe the trial court's entry in a manner that supports, not undermines, its ultimate decision. *Id.* We therefore interpret these sentences to contain two separate findings—that the buyers conducted a home inspection before the closing, and that water damage was discovered in the primary bathroom—both of which are abundantly supported by the record.

{¶40} The sellers also allege as error the trial court's finding that water damage occurred in the primary bathroom. In doing so, they interpret the trial court's finding to mean that water damage occurred *exclusively* in the primary bathroom, when in reality water damage occurred throughout the property. But the trial court made no such determination. We decline to add words to the entry below that simply are not there, particularly when doing so would be contrary to our stringent standard of review. *See Eastley*, 2012-Ohio-2179, at ¶ 21.

{¶41} Next, the sellers contend the trial court's judgment was contrary to the manifest weight of the evidence as to the breach of contract claim. But the manifest weight of the evidence supported the trial court's determination that the sellers did not prove their claim by a preponderance of the evidence. More particularly, the buyers and their real estate agent testified that the property was not in the same or similar condition on June 21, 2021, as when the purchase contract was executed. They testified that the painting was in shoddy condition, outlet covers were missing, wires were exposed, the bathroom shutters were the wrong color, and the hardwood flooring was sun-bleached and scratched, among other problems. The buyers also testified that they had not received a guarantee that a single contractor performed the repair work despite a contractual addendum obligating the sellers to provide one, nor had they had a meaningful opportunity to inspect the property to ensure the repairs were complete prior to closing. This evidence supported the trial court's

determination that the sellers did not prove the elements of a breach of contract claim, and the element of the sellers' performance in specific. *See Qiming He*, 2021-Ohio-1599, at ¶ 6 (1st Dist.). We therefore cannot conclude that the trial court's judgment was against the manifest weight of the evidence.

**{¶42}** Nor was the trial court's judgment as to the implied duty of good faith and fair dealing claim against the manifest weight of the evidence. Because the implied duty claim cannot stand absent a breach of contract, the lack of a valid breach of contract claim is enough to defeat the claim alone. *See Lucarell*, 2018-Ohio-15, at ¶ 42. But even if it were not, the manifest weight of the evidence supports the trial court's judgment. In particular, the buyers' notice of cancellation indicates that they terminated the transaction due to rising property insurance costs. While the sellers label this as a pretext, the fact that insurance was more expensive was uncontroverted at trial. So too was it unchallenged that the contract permitted cancellation on the basis of insurance expense. Given that the contract permitted the buyers' actions, the trial court did not clearly lose its way in denying the sellers' breach of implied duty claim.

**{¶43}** We therefore defer to the trial court's judgment finding that the sellers failed to prove their claims by a preponderance of the evidence at trial and accordingly overrule the sellers' second assignment of error.

### *Conclusion*

**{¶44}** The sellers' first and second assignments of error are overruled. The trial court did not err in denying the sellers' motion for summary judgment, nor was its judgment following trial against the manifest weight of the evidence. We

15

accordingly affirm the judgment of the trial court for the buyers on the sellers' claims of breach of contract and breach of the implied duty of good faith and fair dealing.

Judgment affirmed.

**BERGERON, P.J.,** and **WINKLER, J.,** concur.

Please note:
 The court has recorded its own entry this date.